No. 16,683.

CARR *v.* MILE HIGH KENNEL CLUB.
(242 P. [2d] 238)

Decided March 10, 1952.

Mr. Frank A. Bruno, Mr. H. D. Reed, for plaintiff in error.

Messrs. January & Yegge, Mr. Richard D. Hall, for defendant in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

On the 28th day of September, 1949, plaintiff in error, as plaintiff below, filed this action in damages against the defendant, a Colorado corporation, which owns and operates a stadium and racecourse at 62nd avenue and Colorado Boulevard, where races are run on which pari-mutuel wagers are made.

Plaintiff alleges that on the 4th day of August, 1949, at about 8:30 o'clock P. M., he was occupying a reserved seat, which he had purchased, next to an aisle in the grandstand; that for the purpose of going to a pari-mutuel window, to make a wager, he arose from his seat and stepped out into the aisle, which was a stairway, and while attempting to descend, he was struck, pushed, shoved and tripped from the rear by another patron, causing him to fall and tumble down the stairway and resulting in serious and permanent injury for which he sought $10,000. general damage and $500. special damage.

Plaintiff alleged that his injuries were the direct and proximate result of the negligence and wanton disregard of the rights of his safety by defendant in the operation, management and control of the stadium and its facilities in that it allowed the premises to become dangerous to its invitees and guests; had failed and neglected to con-

struct and maintain grandstand and other facilities in a reasonably safe manner for which they were to be used; allowed the aisles, stairways and passageways to be crowded; made no provision for handrails in the stairways; failed to maintain a sufficient number of police officers to maintain order in all parts of the racing enclosure; and that the stairways and other ways of passage were not kept free from persons seated or standing therein.

Defendant answered, denying the general allegations of the complaint and alleging that the injuries to plaintiff, if any, were proximately caused by persons unknown to defendant, and who were in no way connected with or subject to its control; that plaintiff contributed to his injuries by his carelessness, negligence and heedlessness; and that he assumed the risk attendant upon actions of other patrons of defendant.

The case was set for trial to a jury on May 23, 1950. At the close of the testimony on plaintiff's behalf, defendant moved for dismissal of the action on the ground that plaintiff had failed to prove negligence on the part of defendant in any particular specified in the complaint; that the undisputed testimony showed that the proximate cause of the injury was by the independent action of some third person and not by that of defendant; and further, that plaintiff was guilty of contributory negligence and assumed the risk of the injury.

After argument, the court granted the motion to dismiss and then instructed the jury concerning his reasons for granting a directed verdict.

The reasons advanced by the trial court, after hearing all of plaintiff's evidence, might well be adopted as logical reasons for affirming the judgment herein. A part of the trial court's statement is as follows: "The defendant had no way of knowing or anticipating, and could not have guarded against it in this instance, that any grown men, two or three grown men, would be playing hopscotch or hopping down the aisles. Now,

everybody testified that they knew that there was a great deal of jostling and hurrying about back and forth to get to the betting windows; that the plaintiff himself participated in that. He and his wife and others testified that they had seen that before, he knew about it, had seen it in previous races on one or two occasions. Therefore there is a certain amount of risk in attending this particular type of amusement, and the unusual part of this particular case is that in hurrying and jostling back and forth, these unknown persons hurried in a manner which nobody could anticipate, namely, skipping or hopping about, as it were. That was negligence on the part of those men, not on the part of the defendant corporation, in the Court's opinion."

It is shown that the stadium or grandstand was constructed after a building permit was obtained from the building inspector who inspected the premises after construction was completed and approved the type of construction. The aisle or stairway at the west end of the grandstand, where this accident occurred, is six feet wide with steps sixteen and one-half inches in width, with risers five and one-half inches high, and the stairway is not a steep slope. Plaintiff testified that a hand-rail located on the west wall would have been of no assistance to him. It is undisputed that during the races this stairway is crowded with people, some of them sitting on the steps; but it is a crowd much of which is moving up and down the stairway during the interval between races, and this is occasioned by the patrons going to the parimutuel windows to place bets, or collect thereon. Prior to the time of the accident, plaintiff had gone out into this jostling crowd at least two or three times to place or collect wagers. He testified that there was a space next to the ends of the seats, usually from a foot and one-half to two feet wide, that was open, and as he again attempted to leave his seat to go down the stairway, he heard what seemed to be someone jumping more than a step at a time behind him, and while he did

not look around, he was struck, apparently by the shoulders of the person hurrying down the stairway, knocked on down the stairway, and his injury incurred. He had gone up and down the stairway or aisle after every race and knew, or should have known, the conditions prevailing. He knew the aisle or stairway was crowded and the crowd boisterous, and when he got out into the aisle, he assumed whatever risk might attend under the circumstances.

■ There is evidence that defendant had guards and attendants to preserve general order; however, to prevent this unexpected happening, which could not be anticipated, defendant would have been called upon to provide an attendant or guard for each patron who might want to go to the parimutuel windows, which, of course, would be an extraordinary and uncalled for requirement. Plaintiff was not a stranger to the conditions prevailing, since he had attended races there on previous occasions and was thoroughly familiar with all the conditions. The very nature of the sport in which plaintiff was engaging tends to create excitement among the betting patrons and some hurry and anxiety controls their movements back and forth on such occasions. That any one or more of the patrons would be as rude as the person who jolted into plaintiff apparently was, is something that would not be anticipated by defendant in the ordinary course of management and control of the premises. The action of this person was the proximate cause of plaintiff's injury, and not the lack of handrails or other equipment, or the lack of anything by which defendant could have prevented the accident by ordinary or reasonable care. Defendant was not an insurer of plaintiff's safety and was called upon to provide and maintain only reasonable means for plaintiff's protection and safety. In an early Colorado case, *Snyder v. Colorado Springs & Cripple Creek District Ry. Co.*, 36 Colo. 288, 85 Pac. 686, a damage suit by a passenger on a train of defendant railroad company, where a greater degree

of care is required than in horse or dog-race stadiums, such as here, our court quoted with approval the following from *Stone v. Boston & A. R. Co.*, 171 Mass. 536, 51 N.E. 1:

"One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable."

The court further said:

"Tried by these tests, the defendant is not responsible for the consequences of the passenger's act. There is nothing to show that such a consequence as happened was liable to occur. It was, of course, possible, that some extremely nervous or irritable person would become angry because of his being inconvenienced on account of the crowded condition of the car, but it is not in accordance with the usual and ordinary course of events to anticipate that a seated passenger would so far lose control of himself on account of having a standing passenger crowded against him that he could eject the standing passenger from the car with such force as to throw him over the head of one who was standing upon the step below the party so ejected.

"It is apparent from the record in this case, that the proximate cause of the injury to plaintiff was the action of the irritated passenger, and that this cause could not be anticipated by defendant or its agents. The plaintiff, however, contends that this question should have been submitted to the jury. This course would have been necessary if material facts had been in dispute, but where, upon all the evidence, the court is able to see that the resulting injury was not proximate but remote, the plaintiff fails to make out his case, and the court should so rule."

An almost parallel case is found in 31 N. Y. S. 2d, page 108, *Futterer v. Saratoga Ass'n for Improvement of*

*Breed of Horses.* This case is almost identical in facts to those in the case before us, and supports the finding and judgment of the trial court herein.

█ From the evidence we see no actionable negligence on the part of defendant, and the claimed negligence is so remote that defendant cannot be held liable. There was no real dispute as to the material facts, and when the trial court apparently determined therefrom that the injury was the proximate result of the actions of a third party, it properly withdrew the case from the jury and determined the question as one of law; therefore, its judgment is affirmed.