143 Cal.App.2d 514 (1956)
299 P.2d 941
IRENE RICHTER, Respondent,
v.
ADOBE CREEK LODGE et al., Defendants; HENRY WAXMAN, Appellant.
Docket No. 16561.
Court of Appeals of California, First District, Division One.
July 30, 1956.
Cooley, Crowley, Gaither, Godward, Castro & Huddleson for Appellant.
Herron & Winn and John Wynne Herron for Respondent.
WOOD (Fred B.), J.
Plaintiff, a business invitee at defendant Waxman's recreational resort, sat down on the steps in front of a stage which was enclosed in front by a heavy *515 canvas curtain. A piano, pushed and pulled toward the front of the stage by two 13-year-old boys, went over the edge and onto plaintiff, to her serious injury.
Plaintiff obtained a verdict for $54,980 which was reduced to $42,500 as the condition for an order denying a new trial. Defendant's principal point in support of his appeal from the judgment and from an order denying his motion for judgment notwithstanding the verdict is that plaintiff failed as a matter of law to prove that her injuries were proximately caused by defendant's negligence.
The stage was enclosed at the rear and either side by a wall and covered with a roof. The boys entered out of curiosity and engaged in throwing a dart from wall to wall. It disappeared in the vicinity of the piano so they moved the piano away from the wall toward the center of the stage. Failing to find the dart, they undertook to move the piano back into place, one pulling and the other pushing. One of the boys said it at first moved a little hard, so they both tried a little harder and "finally it started moving." The other boy, asked if it moved rather freely as they went toward the front, said "No, sir, I don't believe so." As one of the boys expressed it, as one was pushing and the other pulling, "it sort of swerved around ... and then one of the casters went off, and it started falling." The other boy said "for some reason we got it too close to this first step here, and we misjudged the place and it started to topple over on one caster." Anne Sargent, one of the members of plaintiff's group testified that, hearing noises which attracted her attention (the noise of rolling, like skates or wheels), she opened the curtains at the front of the stage, saw the piano and on it a boy stretched out lying across the top of the piano. The other boy was in a "pushing position" behind one end of the piano.
The stage, 30 feet wide by 15 feet deep, had a smooth cement surface and, for drainage purposes, sloped 5 inches in 15 feet.
The piano was normally kept with its back against the left side wall, about 3 or 4 feet from the front of the stage. According to one of the boys that was where it was when they began moving it. The other boy placed it near the middle of the rear wall with one end against the wall.
The piano had been placed there for the use of patrons. It was an upright, weighed about 600 pounds and was about 5 feet high. It had double wheel casters for case of movement. *516 An expert witness testified that with this type of piano, when a caster drops off onto a lower surface, there is a tendency to throw the piano over. It has a narrow board across the bottom which makes it easier to tip it over in the back and hard to handle on a dolly even, "it always wants to roll." If this bottom board were wider it would be safer.
Defendant testified that he had owned the piano in question for about five or six years prior to the date of the accident. He knew that the surface of the stage was slightly slanted for drainage purposes. He did not know that a cement surface is conducive to the rolling of a piano. There was a standard place where the piano was kept when not in use. He had no rule that the piano could not be moved without securing permission of the management. He had instructed his foreman to put the piano in its regular place when it was not there. He knew that people moved the piano from its regular place. He thought that he could move the piano by himself.
Defendant had no blocks or chains or other means of fastening the piano at its normal location. There was a horizontal 8-inch by 8-inch timber at the front edge of the stage floor extending 5 feet toward the center from either end, secured to a vertical 8-inch by 8-inch timber which ran from the floor to the roof.
The piano had been on the stage some four or five years, ever since it was installed, with the possible exception that during the winter it would be removed and be put away. It was old-fashioned but a good instrument and in good working condition when he acquired it. One of the boys testified that he tried the keys but no sound came out. Defendant did not know what condition the piano was in at the time of the accident. He did not determine what condition it was in.
There was no evidence that anyone had previously been injured as a result of his own or another's use of this piano on this stage.
[1] The basic applicable principle is that the "duty owed by an owner to an invitee is to exercise reasonable care in maintaining his premises in a safe condition so as not to injure such invitee. (Butcher v. Queen City Iron & Metal Co., 99 Cal. App.2d 25 [221 P.2d 265].)" (Ashley v. Jones, 126 Cal. App.2d 328, 332 [271 P.2d 918].)
[2] There was nothing about the piano itself or its mere presence upon the stage that constituted a hazard to invitees. This piano, despite its large ball-bearing casters and the *517 smoothness and slope of the stage, was neither a self-propelling nor a "free-wheeling" instrument; it moved with difficulty. It was foreseeable that patrons might move the piano about upon the stage as might suit their convenient use of the stage. But that was not an operation which of itself would render the premises foreseeable unsafe for invitees. Nor was that the causative factor here.
It was the handling of the piano in such a manner as to push one corner of it (one of the casters) over the edge and off the stage that caused the instrument to topple over and injure plaintiff. That was not a danger known to the defendant, nor one which under the circumstances of the case his duty of reasonable care charged him with anticipating and guarding against, especially in view of the lack of any similar occurrence during the four or five years this piano had been on this stage.
One of the most recent cases persuasive of this view is Porter v. California Jockey Club, Inc., 134 Cal. App.2d 158 [285 P.2d 60]. A nonsuit was affirmed in an action brought by a patron of a race track who was injured when another patron running upstairs collided with her. Mr. Justice Dooling, speaking for the court, said: "In passing upon the motion for nonsuit the trial judge asked: `should the track assume not only that a man is going to run but that he is going to run right into a person standing in the space that he must occupy, and guard against that?' This question pointed up the weakness of plaintiff's case. It was established that spectators were in the habit of congregating on the stairways at the start of each race and that bettors were in the habit of running to place bets at the last moment; but there was no evidence of any prior negligent conduct on the part of even one spectator. The liability of the landowner to provide against injury to an invitee from the act of another is based upon the fact that the landowner has notice of prior conduct from which he could reasonably anticipate that such injury might occur. (Edwards v. Hollywood Canteen, 27 Cal.2d 802, 810 [167 P.2d 729]; Terrell v. Key System, 69 Cal. App.2d 682 [159 P.2d 704]; Stockwell v. Leland Stanford Jr. University, 64 Cal. App.2d 197 [148 P.2d 405]; Rest., Torts, § 348.)
"An injury of the sort which occurred to appellant could only happen if the conduct of the spectator who ran into her so violently as to knock her down was either negligent or wilful.
*518 [3] "It is axiomatic that in the absence of conduct to put him on notice to the contrary a person is entitled to assume that others will not act negligently or unlawfully. (Leo v. Dunham, 41 Cal.2d 712, 715 [264 P.2d 1].) We are satisfied that there was no evidence of any facts in this case which would reasonably put respondent on notice that one spectator would run violently into another so as to put the duty upon it to take steps to guard against such contingency. Such cases as have considered a like question in other jurisdictions support this conclusion. (Futterer v. Saratoga Assn. etc. Breed of Horses, 262 App.Div. 675 [31 N.Y.S.2d 108]; Carr v. Mile High Kennel Club, 125 Colo. 251 [242 P.2d 238]; Dahna v. Clay County Fair Assn., 232 Iowa 984 [6 N.W.2d 843].)" (P. 160.)
Of the additional similar cases which could be cited, the following should suffice: Olson v. Whitthorne & Swan, 203 Cal. 206 [263 P. 518, 58 A.L.R. 129], customer was hit by swinging door when leaving store, nonsuit affirmed; Schwerin v. H.C. Capwell Co., 140 Cal. App. 1 [34 P.2d 1050], plaintiff going down on an escalator was injured by small boys who were attempting to ascend, nonsuit affirmed; Worcester v. Theatrical Enterprises Corp., 28 Cal. App.2d 116 [82 P.2d 68], theater patron kicked in back by intoxicated patron, order for judgment notwithstanding the verdict affirmed; Fitzgerald v. Million Dollar Theatre, Inc., 61 Cal. App.2d 17 [141 P.2d 935], plaintiff injured by blow on the head received while viewing a motion picture performance, judgment for defendant affirmed; Barnes v. J.C. Penney Co., 190 Wash. 633 [70 P.2d 311], customer in aisle of store was struck by child riding tricycle that was on display, order for new trial reversed and dismissal of action directed.
Plaintiff's authorities are readily distinguishable. For example, among them are these: Harvey v. Machtig, 73 Cal. App. 667 [239 P. 78], involved an invitee at a public resort who was injured by the collapse of a tree upon which there was a platform used for entertainment purposes and presented factual issues because there was substantial evidence that the tree was decayed to such an extent that the decay was plainly visible to the casual observer. The plaintiff in Spore v. Washington, 96 Cal. App. 345 [274 P. 407], a business invitee, delivering coal, tripped over a loose board of a wooden walk and the court took notice of the fact that such a structure deteriorates with age and exposure to the weather and observed that a jury might easily have concluded that *519 the slightest inspection would have disclosed to the defendant the conditions actually existing. In Martin v. Los Angeles Turf Club, Inc., 39 Cal. App.2d 338 [103 P.2d 188], a race track patron descending a stairway stepped on a bottle and fell and there was evidence that before and after the accident there was "all kind of stuff, including beer bottles, pop bottles" etc., on the steps. The plaintiff in Basye v. Craft's Golden State Shows, 43 Cal. App.2d 782 [111 P.2d 746], was hit by a deflected bullet at a shooting gallery and there was evidence of negligent failure to make reasonable inspection to see that the apparatus and the methods of operation were reasonably safe, including evidence that the beaverboard used to prevent this kind of accident was badly perforated and in a deteriorated condition.
Those circumstances were distinctly different from the lack of an evidentiary basis for charging the defendant Waxman with foreseeability of and legal responsibility for the causative factors which operated in the instant case.
The judgment and the order appealed from are reversed with directions to the trial court to grant the defendant's motion for judgment notwithstanding the verdict.
Peters, P.J., and Bray, J., concurred.
Respondent's petition for a hearing by the Supreme Court was denied September 25, 1956. Carter, J., was of the opinion that the petition should be granted.