Arthur Wachtel, J.
These are 53 nonpayment proceedings jointly tried. The period involved generally is for rent for the months of July through October, 1968, with varying nonpayment months alleged within that period. The defense in all these cases is the same. It alleges a general denial and, further, as a counterclaim 1 ‘ the full amount of the rent claimed because of failure of consideration on the part of the Housing Authority in that the Authority has failed to maintain safe premises in the Lester Patterson Houses; and requests, by way of relief, that this Court in equity order that whatever rent becomes due to the Authority *848 be applied to the establishment of safe premises in said Patterson Houses.”
These proceedings involve Lester W. Patterson Houses, a low-rent public housing project operated by the landlord New York City Housing Authority pursuant to the Public Housing Law of the State of New York (L. 1939, ch. 808, as amd.; Cons. Laws, ch. 44-A). The project is occupied by 7,150 people located in the South Bronx. The tenants’ contention is that there is insufficient protection provided by the Housing Authority despite the fact that there has been continuous criminal activity within - the project, that dope addicts have been permitted to congregate therein, that there have been repeated instances of muggings, rapes, burglary and assaults, or threats thereof, all of which have placed the tenants in a state of constant fear.
The tenants assert as a defense constructive eviction and breach of a covenant of quiet enjoyment. The rule has been established in landlord and tenant cases arising in multiple dwellings that “ as to acts done in those parts of the building under landlord’s control, the landlord must answer for the manner of their use to his tenants ” (1 Rasch, Landlord and Tenant and Summary Proceedings, § 929); and it has been held that where disorderly persons congregate in the halls and elevators under the control of the landlord with the knowledge of the landlord and as a result tenants were accosted and insulted and their peace and comfort were violated, and such acts are permitted by the landlord to take place, they may ground a claim of constructive eviction (Phyfe v. Dale, 72 Misc. 383). As the court there said (p. 384): “The defendant was not obliged, by any rule of law or reason, to remain in the premises and permit his wife to be grossly insulted and the peace and comfort of his family to be rudely interrupted. The actions complained of, in so far as they were committed in that part of the premises which were under the control of the landlord, constituted a constructive eviction.” However, the Court of Appeals has required a showing of abandonment of the premises to permit the assertion of this claim. (Herstein Co. v. Columbia Pictures Co. 4 N Y 2d 117.) This is the same defense raised in Matter of New York City Housing Auth. v. Medlin (57 Misc 2d 145) and it was dismissed in the learned opinion of my colleague, Judge Wahl, followed in New York City Housing v. Crespo (Civil Ct. of City of N. Y., Bronx County, Aug. 2, 1968, L & T No. 4391, 1968, Callahan J.). It is true that the tenants should have a reasonable opportunity to vacate (cf. Krausi v. Fife, 120 App. Div. 490) and the existing shortage of suitable low rent housing may be considered upon the question as to whether a reasonable time has *849 expired. Nevertheless, the requirement of abandonment under Herstein (supra) controls, and no such showing has been made in respect of any one of the proceedings herein.
The tenants now present a new theory. They now seek to apply the rule of Caldwell v. Village of Island Park (304 N. Y. 268). They argue that under this rule, when a village or municipality extends an invitation to the public to enter and use a park or playground or place of recreation, it owes those accepting that invitation a duty of reasonable care against foreseeable dangers, and this includes “ criminal and patently dangerous activities.” (p. 275). The Caldwell rule has been applied to ■accidents occurring within areas under the control of the New York City Housing Authority, where there was insufficient supervision to prevent acts committed in violation of rules specifically established by the Authority, as. in Geigel v. New York City Housing Auth. (17 A D 2d 838, affg. 225 N. Y. S. 2d 891) and Da Rocha v. New York City Housing Auth. (282 App. Div. 728, affg. 109 N. Y. S. 2d 263). However, these cases are not authority for the proposition that there is a legal duty either in respect of a municipality or the City Housing Authority to supply police protection in favor of a private person or class of persons in the absence of some relationship on the part of the defendant to the plaintiff creating a duty to use due care for the benefit of the plaintiff. This has been established in respect of a municipality in Schuster v. City of New York (5 N Y 2d 75) and has been followed in the more recent case of Motyka v. City of Amsterdam (15 N Y 2d 134) and, although with a reservation as to “ the injustice of the rule and its incongruity under modern conditions ”, in Messineo v. City of Amsterdam (17 N Y 2d 523). (See, also, Riss v. City of New York, 22 N Y 2d 579.) There is thus no basis for the tenants’ argument of any duty by analogy in respect of the New York City Housing Authority under the present state of the law. There is no precedent for a duty on the part of the landlord to provide police protection upon which to base a tort claim for the tenants in the absence of a covenant in the lease or statute, and this applies to the New York City Housing Authority in its landlord and tenant relation.
There has been a program instituted by the New York City Housing Authority whereby some police protection is afforded. The voluntary assumption of services by a landlord does not create “ a duty nor imposes an .obligation ” upon the landlord “ to continue doing so in perpetuity” (Fogelson v. Rackfay Constr. Co. 300 N. Y. 334, 340). Even if the rule that a duty voluntarily assumed be properly exercised can be applied (as in *850 Schuster v. City of New York, supra, p. 87), the tenants have failed to establish a case on the basis of “psychic injury ”. They rely upon Battalia v. State of New York (10 N Y 2d 237) in support of their claim of tort liability for fear caused by the presence of a large number of dope addicts and the ‘ ‘ failure of the Authority to institute reasonable security measures The Battalia case overruled Mitchell v. Rochester Ry. Co. (151 N. Y. 107) and involved mental disturbance and fear of the plaintiff for the plaintiff’s own safety. Under the present state of the law it has not been extended where the act or acts in question cause physical harm through fright or shock at the peril of a third person (Kalina v. General Hosp. of City of Syracuse, 31 Misc 2d 18, affd. 18 A D 2d 757, affd. 13 N Y 2d 1023). See Prosser, Law of Torts (3d ed., pp. 352-354), wherein Special Term dictum to that effect was followed by the Appellate Division, First Department in Markowitz v. Fein (30 A D 2d 515 [May, 1968]) and in the Third Department in Tobin v. Grossman (30 A D 2d 229 [June, 1968]). The evidence adduced by the ■tenant Francisco Laboy as to an act of assault which he witnessed committed upon a third person six months ago and an act of assault upon his son which he did not witness would not be covered under the present state of the law. The evidence adduced by the tenant Iris Hall as to an incident of an assault and attempted rape committed upon her person a year and a-half ago was introduced as part of the evidence to substantiate the asserted criminal activity which the tenants claim has caused the pervasive fear in the project. There was no proof that this specific isolated act a year and a-half ago “could reasonably have been anticipated so as to impose a duty upon the landlord to increase existing security measures ” at or prior to the commission of the act. (Cf. Alebrande v. New York City Housing Auth., 49 Miscx 2d 880 [App. Term 1st Dept., March, 1966], revg. 44 Misc 2d 803) nor was there proof as to the extent of police protection that was provided at and prior to the commission of this act and whether the alleged inadequacy of police protection was the proximate cause of the psychic injury now claimed by the tenant.
The tenants in their memorandum of law state, “ It should be noted that the tenants are not asserting that they need an increase of ‘ x ’ number of policemen; if more policing isn’t feasible, other steps could be taken such as better lighting, locked outer doors etc. Tenants simply assert that, so long as reasonable measures have not been taken, they are entitled to money damages for the psychic and emotional injury which the Housing Authority’s breach of duty proximately causes in them.”
*851 The testimony of Deputy Inspector Deckel, commanding officer of the Patrol Bureau of the New York City Housing Authority Police, is filed herewith. It gives in detail the security measures that have been taken, and the increase in police force which has been provided for the projects under its jurisdiction under subdivision 5 of section 402 of the Public Housing Law.
The tenants have been in a constant state of fear because of the criminal activity in the project. The court cannot and has not the power to determine the specific security measures that should be taken in addition to those that have been adopted. But the testimony of the tenants as to the presence of “ strangers ” in the halls and elevators, of dope addicts congregating on the grounds of the project, that muggings and assaults have occurred from time to time, that the police force is “ invisible, ” that the adjacent Mott Haven Houses have better and more adequate protection, should be given consideration by the Authority. It is to be noted that under subdivision 5 of section 402 of the Public Housing Law the Legislature has empowered the housing police ‘ ‘ to preserve the public peace, prevent crime, detect and arrest offenders * * * disperse
unlawful or dangerous assemblages and assemblage which obstruct free passage; protect the rights of persons and property ’ ’. This is a matter of administration and legislation. The court is without power to determine the administrative and budgetary requirements involved, and the legislative-executive decisions as to how the resources of the community may be deployed for the proper protection of the people.
Accordingly, the court finds judgment for the landlord; counterclaims dismissed.