Edward Goodell, J.
The question raised by this motion for summary judgment for unpaid rent is the validity of a defense and counterclaim based on the fact that the defendant and his wife were mugged in the public areas of the apartment house in which they lived while the defendant was a tenant of the plaintiff-landlord.
The defendant’s tenancy at 1950 Andrews Avenue, not far from New York University’s Bronx campus, began in October, 1959, pursuant to a written lease for apartment 324 that expired on September 30, 1961. After the lease expired the defendant continued in occupancy as a statutory tenant for 10 years more until October 15,1971 when he moved away, claiming that he was constructively evicted.
The present action seeks to recover the October, 1971, rent of $241.33 and a balance of $141.02 computed at the rate of $14.10 for each month from August 1, 1970 to October 1, 1971, based upon an increase in rent granted by the Bent and Behabilitation Administration of the City of New York — a total of $382.35.
The first affirmative defense and counterclaim, as noted, are predicated on the undisputed facts that the defendant was “ robbed on December 31, 1970 at knifepoint in the lobby ” and that his wife ‘ ‘ was robbed and assaulted by two men in the corridor outside our apartment on September 27, 1971”. It is claimed that as a result of the incident in which the defendant’s wife was involved she “became seriously ill” and “ our family physician advised that it was essential to her health that she move out of the building as soon as possible ’ ’. It is also alleged by the defendant that ‘ ‘ During the last year and one half or two years of my occupancy a great number of crimes, including rapes, robberies and assaults, occurred inside the building ”. Because of these incidents and the circumstance that a 20-year-old student was raped in the building on September 28, 1971, the defendant claims he vjas constructively evicted and moved out on October 15, 1971. The counterclaim for $1,185 consists of the claimed loss of $185 for stolen prop *472 erty belonging to the defendant, $700 for medical services rendered to the defendant’s wife, and $300' for moving expenses.
It is the defendant’s claim that the incidents of assault and robbery resulted “ from the plaintiff’s failure to take even minimal steps to secure 1950 Andrews Avenue The meaning ascribed to the alleged lack of “ minimal steps ” is specified in the following language: ‘ ‘ There was no operating lock on the front and rear doors of the building. The tenants demanded that locks be installed and offered to contribute part of the cost of a bell and buzzer system, but he [referring to the plaintiff] did nothing to maintain security in the building ”.
While neither the moving nor the answering affidavits discuss the legal basis for the defendant’s claim, it appears from the answer that the counterclaim is grounded in tort, in view of the first sentence of paragraph 4 where it is said that “ Milo Hall wilfully and negligently failed to maintain adequate protection for the tenants of 1950 Andrews Avenue ’ ’.
1. While the counterclaim appears to be framed on the theory of negligence it may not be inappropriate, since this is a motion for summary judgment, to approach consideration of the landlord’s obligation from the contract point of view.
Inasmuch as the terms of the lease executed in 1959 are not stated, there can be no reliance here upon an express covenant. The question then is whether the landlord-tenant relationship creates by implication an obligation on the part of a landlord to provide security to tenants against the criminal acts of third persons. In the case of Kline v. 1500 Massachusetts Ave. Apt. Corp. (439 F. 2d 477) the United States Court of Appeals for the District of Columbia Circuit, in a 2 to 1 decision, appears to have extended the doctrine pronounced in the Javins case (Javins v. First Nat. Realty Corp., 428 F. 2d 1071), that there is an implied warranty of habitability, to include an implied warranty of security against the criminal acts of third persons. It was stated in the course of its opinion that (439 F. 2d 477, 485) “on the rationale of this court in Levine v. Katz, Kendall v. Gore Properties, and Javins v. First National Realty Corporation, supra, there is implied in the contract between landlord and tenant an obligation on the landlord to provide those protective measures which are within his reasonable capacity ”.
It must be said that an implied warranty of habitability and an implied warranty against the criminal acts of third persons are not precisely the same. The thought occurs that the implication of a warranty of security may be the product of a desire to deal with the crisis presently posed by criminal activity rather than one that is derived from the expectations that are implicit *473 when the landlord-tenant relationship is created. It is doubtful, at least, speaking generally, that the generality of tenants expect when leasing an apartment that the paymentAif rent implicitly includes protection from criminal attack by third persons or that the generality of landlords include in their computation of the rent to be charged the cost of providing such security. Certainly there is nothing presented in the present motion to indicate that either party had such expectations. or considerations in mind when the relationship of landlord and tenant was created at 1950 Andrews Avenue.
In any event the imposition of a police function upon landlords as an implication of the landlord-tenant relationship would appear to be so much a matter of policy, including the problem of the incidence of cost, that it would seem to be more appropriate to consider and determine it legislatively rather than judicially.
It should be added here, insofar as the Kline case is concerned, that the consideration and the expectation at the inception of the tenancy included security. When the lease in that case was made in 1959 the landlord provided the services of a doorman, a man at a desk in the lobby and garage attendants who were stationed at another entrance to the lobby. By mid 1966 all of these elements of security had been withdrawn.
2. From the point of view of whether there is tort liability, the first question is what duty or obligation did the landlord have toward the tenant, recognized by law, to which he failed to conform. (Prosser, Law of Torts [3d ed.], p. 146.)
In the Kline case (439 F. 2d 477, supra) the court found a duty on the part of the landlord based on ‘£ his control of the areas of common use and common danger ” and therefore ££ the only party who has the power * * * to provide the necessary protection A (439 F. 2d 477, 481.)
Whether in the absence of express covenant that obligation is implicit in the landlord-tenant relationship and is so £ 1 recognized by the law ’ ’ may be questioned. (See Goldberg v. Housing Auth. of Newark, 38 N. J. 578.) Customarily the landlord’s control of the common areas is associated with the obligation to maintain and repair rather than with a duty to police, and the areas of ££ common danger ” in relation to an apartment house would seem to be a term newly minted rather than the expression of an accepted legal concept.
While it is not stated that there was an operating lock on the front door at any time during the tenancy, it will be assumed here that there was one and that the plaintiff failed to repair it. The question then is whether there is 11 A reasonably close causal *474 connection between the conduct and the resulting injury ’ ’ or “what is commonly known as ‘legal cause’ or ‘proximate cause ’ (Prosser, supra, p. 146.)
Judicial notice can be taken of the fact that one of the serious problems facing the cities of the Nation, including New York City, is the high incidence of crime and that muggings, embracing assault and robbery, are among its manifestations both on the streets and in apartment houses. It is a social problem whose dimensions are so broad and deep that there is present danger on and off the streets despite police effort.
Essentially, therefore, a question of policy is involved as to how far the court should go in placing responsibility for a condition that obviously is not caused by this plaintiff landlord.
In his analysis of causation, Prosser says that “As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability”. (Prosser, supra, p. 240.)
In my opinion the lack of a front door lock and the absence of a bell and buzzer system are not so closely connected with the result or of such significance as to warrant the imposition of liability upon "the landlord for assaults upon and robberies of his tenants by third persons. Access to the lobby and the corridors of an apartment house may be delayed by a lock on the lobby door or a bell and buzzer system, but they cannot prevent entrance to a person intent upon committing a crime. A bell and buzzer system may in fact be used as a means of gaining access, and entrance can also be achieved as tenants and visitors enter and leave the lobby.
This situation, therefore, comes within the “but for” rule, namely that the plaintiff’s conduct “ is not a cause of the event, if the event would have occurred without it ”. (Prosser, supra, p. 242.)
The case of Smith v. A B C Realty Co. (66 Misc 2d 276), is clearly distinguishable. There the plaintiff lived on the top floor of a five-story walk-up multiple dwelling. From the roof, a fire escape led to the ground, the plaintiff’s bedroom window being at the first platform below the roof. Two weeks before the incident that was the subject of the litigation, a piece of glass, about three inches by six inches was cut from the bedroom window adjacent to the window latch. The plaintiff made many demands upon the landlord for repair of the window without avail. On the night of Juné 19, 1971 she locked the window *475 and went to sleep. An intruder reached in through the broken glass opened the window, entered and raped the plaintiff.
In the Smith case, therefore, the landlord had a duty to repair which it neglected to perform and its failure to perform was a proximate cause of the plaintiff’s injury.
Foreseeability is also a factor to be considered. "While the foreseeability of the commission of a crime may not only be possible but predictable, that does not necessarily impose a duty upon the landlord to police an apartment house. As the Supreme Court of New Jersey said in Goldberg v. Housing Auth. of Newark (38 N. J. 578, 583), “ The question is not simply whether a criminal event is foreseeable, but whether a duty exists to take measures to guard against it ’ ’.
Ultimately, “ ‘ the basic question is one of policy ’ ”. (10 ALR 3d 624; Feezor and Favour, Intervening Crime and Liability for Negligence, 24 Minn. L. Rev. 635, 642.)
Since I believe that policy in the fact situation presented here should be determined legislatively, it is my opinion that the first and second counterclaims should be dismissed.
3. The third counterclaim seeks the return of $170 deposited with the landlord as security. The landlord does not dispute the defendant’s right to set off this amount. The defendant, therefore is entitled to a setoff in the sum of $170.
Accordingly I find that the defendant is indebted to the landlord for the October, 1971, rent in the sum of $241.33 and for the balance of rent at the rate of $14.10 a month from August 1, 1970 to October 1, 1971 amounting to $141.02 or a total of $382.35, less security in the sum of $170.
Therefore summary judgment is granted in favor of the plaintiff in the sum of $212.35, together with interest thereon, and the first and second counterclaims are dismissed.