[Civ. No. 38154. First Dist., Div. Two. Nov. 10, 1976.]

CAROLYN JEAN TOTTEN, a Minor, etc., et al.,
Plaintiffs and Appellants, v.
MORE OAKLAND RESIDENTIAL HOUSING, INC.,
Defendant and Respondent.

---

**COUNSEL**

Warwick, Stahl, Warwick & Gardner, Benjamin Warwick and Michael A. Gardner for Plaintiffs and Appellants.

Bennett, Van de Poel, Campbell & Strickland, William D. Anderson and Bryant M. Bennett for Defendant and Respondent.

**OPINION**

**KANE, J.**—This is an appeal from the trial court's judgment dismissing appellants' action after respondent's demurrer to the second amended complaint was sustained without leave to amend.

Respondent, More Oakland Residential Housing, Inc., a nonprofit corporation, owned and operated highrise apartment houses in Oakland, California. The purpose of the apartment complex was to replace slum dwellings in the ghetto area of the city and to provide inexpensive housing for low income people. The apartment house where the injury in dispute occurred was a part of the complex.

The events giving rise to the litigation took place on the night of December 22, 1973. At that time appellant Carolyn Jean Totten ["Carolyn"], a minor, was visiting her boy friend, a tenant of the apartment house. While she was sitting in the laundry room waiting for her boy friend, a fight erupted between John Chivars and Anthony Ottrix, two strangers. In the course of the fight Chivars chased Ottrix into the laundry room and started firing a pistol. Several of the shots went astray and hit Carolyn.

In their second amended complaint, appellants alleged that respondent owed a duty to protect Carolyn from the criminal conduct of third persons; that respondent breached this duty by failing to provide proper guard service or other supervision of the premises; and that as a proximate result of said failure Carolyn incurred severe personal injuries.

The question presented on appeal is one of first impression. Broadly defined it poses the issue of whether a landlord may be held liable for injuries caused to a stranger, who happens to be on the premises, by the criminal attack of other strangers. ■ A careful analysis of common law principles relating to the tort liability of the possessor of land as well as the policy considerations laid down in *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496] and other cases lead us to the conclusion that in the situation here present the imposition of such a duty would be entirely unwarranted. In the absence of duty, a vital element of actionable negligence (*Richards* v. *Stanley* (1954) 43 Cal.2d 60, 63 [271 P.2d 23]; *Nevarez* v. *Thriftimart, Inc.* (1970) 7 Cal.App.3d 799, 803 [87 Cal.Rptr. 50]), appellants' complaint failed to state a cause of action and the demurrer thereto was properly sustained by the trial court.

■ As a basic general principle, in the absence of a special relationship or circumstance, a private person has no duty to protect another from a criminal attack by a third person (*Richards* v. *Stanley, supra*, at p. 65; *Kline* v. *1500 Massachusetts Avenue Apartment Corp.* (1970) 141 App.D.C. 370 [439 F.2d 477, 43 A.L.R.3d 311]; 4 Witkin, Summary of Cal. Law (8th ed. 1974), § 554, p. 2821; Rest.2d Torts,[1] §§ 314, 315;[2] see also 10 A.L.R.3d 619, 626). A special relationship giving rise to such duty does, however, exist, for example, between common

---

[1]Unless otherwise indicated, all references will be made to the Restatement Second of Torts.

[2]Section 315 provides that *"There is no duty so to control the conduct of a third person* as to prevent him from causing physical harm to another *unless*

carrier-passenger, innkeeper-guest, landowner-invitee, custodian-ward (§ 314 A). The general body of case law dealing with the special relationship of landowner and invitee involves principally two types of cases: one, where a *patron* has been injured in a business establishment by the criminal activity of a third person (i.e., *Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114 [52 Cal.Rptr. 561, 416 P.2d 793]; *Edwards* v. *Hollywood Canteen* (1946) 27 Cal.2d 802 [167 P.2d 729]; *Slater* v. *Alpha Beta Acme Markets, Inc.* (1975) 44 Cal.App.3d 274 [118 Cal.Rptr. 561, 72 A.L.R.3d 1264]; *Campodonico* v. *State Auto Parks, Inc.* (1970) 10 Cal.App.3d 803 [89 Cal.Rptr. 270]; *Young* v. *Desert View Management Corp.* (1969) 275 Cal.App.2d 294 [79 Cal.Rptr. 848]); two, where *a tenant or his employee* has been injured by the criminal conduct of a third person (i.e., *Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504 [118 Cal.Rptr. 741]; *Kendall* v. *Gore Properties* (1956) 98 App.D.C. 378 [236 F.2d 673]; *Kline* v. *1500 Massachusetts Avenue Apartment Corp., supra*; *Samson* v. *Saginaw Professional Building, Inc.* (1975) 393 Mich. 393 [224 N.W.2d 843]). The proposition that the proprietor may be held liable only in a special circumstance finds support also in section 344, which provides in pertinent part that "A possessor of land who holds it *open to the public for entry for his business purposes* is subject to liability to members of the public *while they are upon the land for such a purpose,* for physical harm caused by accidental, negligent, or intentionally harmful acts of third persons . . ." (italics added).

■   The cases holding the proprietor liable for the wrongful acts of third persons emphasize, however, that the proprietor is not an insurer of the safety of his invitees and *his duty* to take affirmative action to control the wrongful acts of third persons *arises only where the possessor has reasonable cause to anticipate such acts and the probability of injury resulting therefrom and fails to take affirmative steps to control the wrongful conduct* (*Edwards* v. *Hollywood Canteen, supra,* at pp. 809-810; *Nevarez* v. *Thriftimart, Inc., supra,* at p. 804; *Young* v. *Desert View Management Corp., supra,* at p. 298). As comment e to section 314 A states: "The duty in each case is only one to exercise reasonable care under the circumstances. The defendant is not liable where he neither knows nor should know of the unreasonable risk, or of the illness or injury. *He is not required to take precautions against a sudden attack from a third person which he has no reason to anticipate . . .*" (italics added).

"(a) *a special relation exists between the actor and the third person* which imposes a duty upon the actor to control the third person's conduct, or

"(b) *a special relation exists between the actor and the other* which gives to the other a right to protection." (Italics added.)

It is beyond dispute that under the traditional rules set out above respondent was under no duty to protect Carolyn from the sudden attack of the two intruders. First of all, it is unquestionable that Carolyn was not an invitee within the meaning of the law (§ 332[3]). She did not qualify as a public invitee for the simple reason that the apartment house in question was not open to the public. Nor was she a business visitor entering the premises upon the invitation of respondent in connection with business dealings. In actuality, Carolyn was simply a social guest of one of the tenants, a licensee who entered the premises upon the invitation of the tenant, not respondent landlord, and was allowed to remain there by virtue of respondent's implied consent (cf. § 330). It is, of course, well settled that under the traditional principles of common law the duty of the landlord to protect the occupier of the land from the wrongful acts of third persons was strictly limited to invitees and did not include either licensees or trespassers.

Secondly, in the instant case a duty cannot be imposed for the further reason that appellants failed to allege sufficient facts that respondent could reasonably foresee or anticipate the criminal conduct in question and the probability of injury resulting therefrom. While there are general allegations in the complaint that the apartment building was located in a high-crime area where violent crimes repeatedly occurred; that respondent had either actual or constructive knowledge thereof; and that there were numerous complaints about violent crimes which had taken place on the premises prior to the incident in question, appellants conspicuously failed to aver either the specific nature of the prior crimes or respondent's knowledge thereof. It has been repeatedly held that in the absence of prior similar incidents, the landlord is not bound to anticipate the criminal activities of third persons, especially where, as here, the wrongdoers were complete strangers to both the landlord and the victim, and where the fight and the shooting incident leading to the injury came about precipitously (*Rosensteil v. Lisdas* (Ore. 1969) 456 P.2d 61; see also *New York City Housing Authority v. Jackson* (1968) 58 Misc.2d 847 [296 N.Y.S.2d 237]; *Hall v. Fraknoi* (1972) 69 Misc.2d 470 [330 N.Y.S.2d 637]). Viewed most favorably, appellants' complaint alleges no more than that the commission of violent crimes was foreseeable in the

[3]Pursuant to section 332, "(1) An invitee is either a public invitee or a business visitor.
"(2) *A public invitee is a person who is invited to enter* or remain on *land* as a member of the public *for a purpose for which the land is held open to the public.*
"(3) *A business visitor is a person who is invited to enter* or remain on *land for a purpose* directly or indirectly *connected with business dealings with the possessor of the land.*" (Italics added.)

apartment house and/or its vicinity. This general allegation, however, does not support the imposition of a duty upon the landlord. As said in *Goldberg* v. *Housing Auth. of Newark* (1962) 38 N.J. 578 [186 A.2d 291, 293]: "Everyone can foresee the commission of crime virtually anywhere and at any time. If foreseeability itself gave rise to a duty to provide 'police' protection for others, every residential curtilage, every shop, every store, every manufacturing plant would have to be patrolled by the private arms of the owner. And since hijacking and attack upon occupants of motor vehicles are also foreseeable, it would be the duty of every motorist to provide armed protection for his passengers and the property of others. Of course, none of this is at all palatable." This view is in conformity with *Rowland* v. *Christian, supra,* where the foreseeability of harm was designated as only *one* of the factors to be considered in the creation of a duty of care.

Appellants vigorously contend, however, that the differences between invitees, licensees and trespassers have been abolished in California, and that the new guidelines laid down in *Rowland* call for the imposition of a duty upon respondent in this case. We disagree.

It is conceded that in *Rowland* the Supreme Court held that the proper test to be applied to the liability of the possessor of land is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others (Civ. Code, § 1714). ■ But while pointing out that the common law classifications are no longer determinative as to the liability of the possessor of land, the court clearly indicated that "the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability . . ." (*Rowland* v. *Christian, supra,* at p. 119). Furthermore, it must be remembered that the court in *Rowland* was dealing with an injury allegedly caused by a defective condition of the defendant's property which the defendant had a duty to maintain and repair. The rules relating to the physical condition of the premises are not applicable to the situation where, as here, it is the conduct of third persons which directly causes the injury (*Nevarez* v. *Thriftimart, Inc., supra,* p. 804).

But quite apart from the foregoing reasons, we believe that under the guidelines set out in *Rowland* and other authorities the imposition of a duty upon respondent would be entirely unfounded and unfair in the present factual context.

The *Rowland* court instructs us that in determining whether the possessor of land owes a duty to the injured victims we must balance a number of considerations. Among these are: the foreseeability of harm to the plaintiff; the closeness of the connection between the defendant's conduct and the injury suffered; the moral blame attached to the defendant's conduct; the extent of the burden to the defendant and the consequences to the community of imposing a duty with resulting liability for breach; and the availability, cost and prevalence of insurance for the risk involved (*Rowland* v. *Christian, supra,* at p. 113). It has also been said that the *imposition of a duty is ultimately a question of fairness* and the inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution (*Goldberg* v. *Housing Auth. of Newark, supra,* at p. 293; see also Prosser on Torts (4th ed.) pp. 205 et seq., 324 et seq.).

When viewed in light of the foregoing precepts, the instant case discloses that the injury to Carolyn was inflicted by two men who happened to enter the apartment house without any legal relationship to either the victim or the landlord. As noted before, this circumstance alone indicates that the harm caused was not reasonably foreseeable by respondent. In addition, we fail to see the requisite close connection between respondent's conduct and the injury suffered. The probability is great that in the situation here present the shooting incident between the two strangers could not have been prevented even if respondent had employed a security guard. For the same reason it may not be claimed that respondent was morally culpable or blameworthy for its failure to protect an unidentified group of victims on its premises against the criminal attacks of an equally unidentified or unidentifiable group of criminals. In addition, the burden to be placed upon respondent and its consequences to the community affected would be extremely onerous. The responsibility proposed by appellants would border on absolute liability which due to its enhanced risk would call for increased insurance premiums if, indeed, insurance would be available at all. Since respondent, a nonprofit organization, would be unable to absorb the surging insurance expenses, the increased cost, as a matter of economic necessity, would be passed on to the tenants in the form of raised rents. The ultimate burden thus would not be borne by the whole community as appellants envision, but rather by the low income dwellers, the very people who could least afford it.

From the foregoing discussion it clearly appears that the principles outlined in *Rowland* fail to support the creation of a duty, and the

relationship of the parties as well as sound public policy also militate against the imposition of liability upon the landlord in the instant case. Moreover, we are deeply convinced that appellants' claim must be rejected for the additional reason that the creation of a new duty in the present situation would run counter to elementary justice and would be patently unfair. Even a cursory analysis of the problem is persuasive that both the proposed duty and the measures to be applied in discharge of the duty defy exact delineation and suffer from inherent vagueness. The questions posed in *Goldberg* could all be asked here: "To which multi-family houses would the duty apply? Would it depend upon the number of tenancies? If so, can we now fix the number? And if the duty springs from a combination of tenancies and prior unlawful events, what kind of offenses will suffice, and in what number, and will crimes next door or around the corner or in the neighborhood, raise the obligation? And if a prescient owner concludes the duty is his, what measures will discharge it? It is an easy matter to know whether a stairway is defective and what repairs will put it in order. . . . [B]ut how can one know what measures will protect against the thug, the narcotic addict, the degenerate, the psychopath and the psychotic?" (*Goldberg* v. *Housing Auth. of Newark, supra,* at p. 297.) These questions by themselves signify the formidable task of defining the exact scope of the duty and the measures required of the landlord to meet that duty. We are in full agreement with the *Goldberg* court that to predicate tort liability upon such a loose and vague standard would be genuinely unfair to the landlord, and also that police protection, which essentially is demanded by appellants here, is and should remain the duty of the government.[4]

Lastly, we note that the cases cited by appellants are clearly distinguishable from the case at bench. In all those cases the injured persons were either tenants or employees of the tenant or patrons or passengers; therefore, a special relationship existed between the parties giving rise to the common law duty to protect against the criminal attack of third persons (i.e., *Taylor* v. *Centennial Bowl, Inc., Edwards* v. *Hollywood Canteen, Campodonico* v. *State Auto Parks, Inc., Young* v. *Desert View Management Corp., Uccello* v. *Laudenslayer, Slater* v. *Alpha Beta Acme Markets, Inc., Samson* v. *Saginaw Professional Building, Inc.,* all *supra; Terrell* v. *Key System* (1945) 69 Cal.App.2d 682 [159 P.2d 704]) and/or the landlord was culpable of some kind of negligence (negligence in hiring): *Kendall* v. *Gore Properties, supra;* failure to repair a defective

---

[4]Recognition of this duty by government itself is evidenced by a legislative declaration (Pen. Code, § 13900) and by the enactment of financial indemnity statutes to assist injured victims of violent crime (Gov. Code, §§ 13959-13969).

lock: *Sherman* v. *Concourse Realty Corporation* (1975) 47 App.Div.2d 134 [365 N.Y.S.2d 239], etc.). In *Kline* v. *1500 Massachusetts Avenue Apartment Corp., supra,* upon which appellants primarily rely, the injured person, who was assaulted and robbed by an intruder in the common hallway of the apartment house, was a tenant of defendant and the evidence showed that the landlord was aware of numerous *identical* offenses committed in the same apartment house. The duty to protect the tenants was imposed because in the light of past experience a repeated assault could be reasonably anticipated by the landlord. The court, however, was eager to add that *"there is no liability* normally imposed upon the one having the power to act *if the violence is sudden and unexpected* provided that the source of the violence is not an employee of the one in control." (P. 483; italics added.)

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 5, 1977. Tobriner, J., and Sullivan, J., were of the opinion that the petition should be granted.