[Civ. No. 57649. Second Dist., Div. Three. Nov. 25, 1980.]

APRIL JAMISON et al., Plaintiffs and Appellants, v.
MARK C. BLOOME COMPANY, INC., Defendant and Respondent.

COUNSEL

Arthur H. Zacks for Plaintiffs and Appellants.

Murchison & Cumming and Bonnie S. Bass for Defendant and Respondent.

OPINION

POTTER, Acting P. J.—Plaintiffs April Jamison and Tranessa Oliver appeal from a judgment for defendant Mark C. Bloome Company, Inc., after defendant's motion for nonsuit was granted.

The complaint sought damages for personal injuries sustained when plaintiffs slipped and fell on the sidewalk adjacent to defendant's premises which "were used for the purpose of servicing automobiles." The complaint alleged that the proximate cause of the accident was defendant's negligence in allowing oil to flow from said premises onto the sidewalk.

The evidence in behalf of plaintiffs was adequate to show that the plaintiffs did slip and fall in oil which had flowed from defendant's premises onto the sidewalk. The accident occurred in the evening hours after the close of defendant's business operations. The source of the oil was two 55-gallon oil drums used for the storage of waste oil. They had been overturned and emptied. There were four such barrels in which the waste oil was collected so that it could be periodically collected and re-cycled. The four drums were stored outside of a service building on a bed of gravel encased by a two by four wood frame. The day following

the accident, two of the four cans were found to have been overturned and the caps removed.

Access to the drums was limited by the presence of a large truck-trailer permanently parked parallel to the wall of the building against which the drums were stored. The distance between the trailer and building was insufficient to allow passage between it and the drums. Access to the middle drums required reaching over the two end drums.

There was no evidence of the precise manner in which the contents had been spilled from the drums. It was obvious, however, that there had been deliberate human intervention since the caps had been unscrewed from the drums and they had been moved some distance after they were emptied. Since no motivation was apparent, the only logical inference was that the spilling of the drums was malicious mischief by unknown vandals. Defendant's premises were located in south central Los Angeles (at 108th and Western), approximately one-half block from Washington High School.

Plaintiffs examined two of defendant's employees as adverse witnesses. Richard McClure, a mechanic who worked at the station at the time of plaintiffs' accident, testified that it had been possible to accommodate the drums inside the service building by relocating the facilities which contained new oil so that both new and old oil containers were locked up at night.

Jerry Rogers, a regional vice president of defendant company, was also examined by plaintiffs. He had been a district supervisor in charge of 5 stores, including the one at 108th and Western at the time of plaintiffs' accident and at the time of his testimony was a supervisor of the activities of 20 stores. In his capacity as supervisor, he had authorized the maintenance of the oil drums in their outside location, based upon aesthetics and avoidance of excessive carrying distances from the service bays. Rogers confirmed McClure's testimony that it had been possible to accommodate the drums inside the service building by removing shelving and moving new oil supplies.

Rogers was also examined as to the incidence of vandalism at defendant's facilities. His testimony in this respect was that prior to the occurrence of plaintiffs' accident, the location at 108th and Western had the highest incidence of vandalism of any of the five stores that he supervised. This vandalism included a variety of destructive acts, in-

cluding the breaking of windows in the office building, the throwing of rocks at the sign on the front of the building and gas pumps had been "kicked and damaged and banged on." A plastic or glass cover of a message board was also continually broken. There was no evidence, however, that the acts of vandalism had ever previously been directed at the waste oil drums nor that any person had ever been endangered or injured as a result of the acts of vandalism. There also had been several burglaries which involved people "breaking in and stealing tires."

The trial court based its ruling granting the nonsuit upon the lack of any duty on defendant's part. After noting that the cause of plaintiffs' injury was "an intentional act or acts committed with a certain amount of deliberation," the court concluded that defendant's failure "to have anticipated that unknown third persons would commit an unlawful act against the property...that...would be the direct cause of injury" was not a breach of duty.

## Contentions

Plaintiffs contend that the court erred in granting the motion for nonsuit because: (1) the evidence is sufficient to show defendant's negligence in light of the prior acts of vandalism, making the risk of harm foreseeable; (2) it is not necessary that the manner in which the harm occurred be foreseeable; and (3) the intervening act of tampering with the oil drums does not break the chain of causation.

Defendant contends that the evidence is insufficient as a matter of law to establish a breach of defendant's duty toward plaintiffs.

## Discussion

### Summary

Duty of care is a question of law. The plaintiffs' evidence does not establish any breach of duty on defendant's part. Though prior acts of vandalism had occurred, they did not endanger anyone's personal safety. Consequently, they did not give defendant reason to know that plaintiffs required protection from such conduct.

*Duty of Care is a Question
of Law for the Court*

■ The "existence of a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member" is a *sine qua non* of a negligence action. (*Routh* v. *Quinn* (1942) 20 Cal.2d 488, 491 [127 P.2d 1, 149 A.L.R. 215].) "Whether such a duty is owed in a given situation is a question of law for the court to determine." (*Nevarez* v. *Thriftimart, Inc.* (1970) 7 Cal.App.3d 799, 803 [87 Cal. Rptr. 50].)

*Plaintiffs' Evidence Fails to Show
Any Breach of Duty on Defendant's Part*

■ The evidence establishes that plaintiffs were injured as a result of the slippery condition of the sidewalk adjoining defendant's premises occasioned by the flow of a large volume of waste oil from two 55-gallon drums on defendant's property which had been deliberately emptied by persons unknown. There is no evidence that any representative of defendant had so emptied the barrels so defendant's negligence, if any, consists of its failure to prevent vandals from doing so. Though defendant had taken no effective steps to secure the drums, they were not a dangerous condition of defendant's property until so tampered with. (*Richter* v. *Adobe Creek Lodge* (1956) 143 Cal.App.2d 514, 516-517 [299 P.2d 941].) Defendant had no opportunity to deal with a dangerous condition created by the spillage since it occurred after close of business and only a short time before plaintiffs slipped and fell in the oil. The rules applicable, therefore, to the determination of duty are those which relate to a possessor of land in respect of harmful acts of third parties thereon which cause personal injury.

■ The fundamental rule of possessor's liability is stated by our Supreme Court in *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]: ". . . . The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative."

In so eliminating limitations upon the possessor's duty to act "as a reasonable man in view of the probability of injury to others" based upon noninvitee status, the court did not suggest any departure from existing rules defining the duty of care toward invitees. At most it held that persons lacking that status were, under appropriate circumstances, entitled to the same protection.

We examine, therefore, the duty of defendant as the possessor of land on the assumption that its duty to plaintiffs was the same as that which it owed to business invitees. ■ The duty of the possessor of land to invitees to protect them from physical harm caused by the intentionally harmful acts of third persons is stated in Restatement Second of Torts, section 344, pages 223-224, as follows: "A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

"(a) discover that such acts are being done or are likely to be done, or

"(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Comment (f) to section 344 states (*id*, at pp. 225-226): "Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have *reason to know*, from past experience, *that there is a likelihood of conduct on the part of third persons* in general which is *likely to endanger the safety of the visitor*, even though he has no reason to expect it on the part of any particular individual." (Italics added.)

The rule thus stated accords with the statement of our Supreme Court in *Rowland* v. *Christian, supra*, 69 Cal.2d at page 119, that the possessor's conduct must be reasonable "in view of the probability of injury to others."

Division Four of this District expressed the same conclusion in *Nevarez* v. *Thriftimart, Inc., supra*, 7 Cal.App.3d at pages 804-805: "In

the cases just cited, as well as those wherein the occupier of premises has the right to control the property (as: owner in possession, lessee, etc.), the occupier has a duty to use ordinary care to maintain the premises in a condition reasonably safe for persons coming thereon. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561]; Civ. Code, § 1714.) This rule relates to the physical condition of the premises, as such. *Where, however, it is the conduct of a third party on the premises which directly causes the injury, liability may attach only where the possessor of the premises has reasonable cause to anticipate such conduct and the probability of resulting injury*, and fails to take affirmative steps to control the wrongful conduct. (*Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 121 [52 Cal.Rptr. 561, 416 P.2d 793]; *Hunter* v. *Mohawk Petroleum Corp.* (1959) 51 Cal.2d 439 [334 P.2d 193]; *Edwards* v. *Hollywood Canteen* (1946) 27 Cal.2d 802, 809-810 [167 P.2d 729]; *Young* v. *Desert View Management Corp.* (1969) 275 Cal.App.2d 294 [79 Cal.Rptr. 848] (petition for hg. by Supreme Court den.); *Richter* v. *Adobe Creek Lodge* (1956) 143 Cal. App.2d 514 [299 P.2d 941]; *Porter* v. *California Jockey Club, Inc.* (1955) 134 Cal.App.2d 158 [285 P.2d 60]; *Baley* v. *J. F. Hink & Son* (1955) 133 Cal.App.2d 102, 110-112 [283 P.2d 349]; *Worcester* v. *Theatrical etc. Corp.* (1938) 28 Cal.App.2d 116 [82 P.2d 68].)" (Italics added.)

Another post-*Rowland* decision applying the Restatement rule is *Rogers* v. *Jones* (1976) 56 Cal.App.3d 346 [128 Cal.Rptr. 404]. A judgment upon a verdict in favor of plaintiff, a spectator injured in the stadium parking lot by another fan's assaultive behavior, was reversed. The fact that there had been prior instances of physical interference with a barrier, which apparently so annoyed the attacker as to provoke his attack, was held not sufficient to require defendant operator of the parking facility to anticipate the probability of such an attack. The court said (*id.*, at p. 352): "While both common experience and the evidence of this case indicate such attacks do occur, neither establishes that they occur with such frequency that the burden of taking precautionary measures to prevent them under the circumstances presented here would not exceed the apparent risk of harm. (See Prosser, Law of Torts (4th ed.) pp. 173-174.)"

The facts in *Rogers* are closely parallel to those in the case at bench. In both cases there had been prior interference with defendant's property, but such interference had not demonstrably threatened physical

injury. *Rogers* is, therefore, strong authority for the denial of duty in the case at bench.

More recently, the lack of duty of a landowner to protect visitors from unprecedented criminal acts was recognized in *Totten v. More Oakland Residential Housing, Inc.* (1976) 63 Cal.App.3d 538 [134 Cal.Rptr. 29]. A demurrer was sustained to plaintiff's complaint alleging she was injured in the laundry room of defendant's low income housing project when a gunfight erupted between two strangers. The plaintiff was the guest of a tenant. She alleged that defendant owed her a duty to protect her from the criminal conduct of third persons and had breached this duty "by failing to provide proper guard service or other supervision of the premises." (*Id.*, at p. 541.) Alternative bases were assigned for upholding the trial court's determination of lack of duty. The second was stated as follows (*id.*, at pp. 543-544): "Secondly, in the instant case a duty cannot be imposed for the further reason that appellants failed to allege sufficient facts that respondent could reasonably foresee or anticipate the criminal conduct in question and the probability of injury resulting therefrom. While there are general allegations in the complaint that the apartment building was located in a high-crime area where violent crimes repeatedly occured; that respondent had either actual or constructive knowledge thereof; and that there were numerous complaints about violent crimes which had taken place on the premises prior to the incident in question, appellants conspicuously failed to aver either the specific nature of the prior crimes or respondent's knowledge thereof. *It has been repeatedly held that in the absence of prior similar incidents*, the landlord is not bound to anticipate the criminal activities of third persons, especially where, as here, the wrongdoers were complete strangers to both the landlord and the victim, and where the fight and the shooting incident leading to the injury came about precipitously (*Rosensteil v. Lisdas* (Ore. 1969) 456 P.2d 61; see also *New York City Housing Authority v. Jackson* (1968) 58 Misc.2d 847 [296 N.Y.S.2d 237]; *Hall v. Fraknoi* (1972) 69 Misc. 2d 470 [330 N.Y.S.2d 637]). Viewed most favorably, appellants' complaint alleges no more than that the commission of violent crimes was foreseeable in the apartment house and/or its vicinity. This general allegation, however, does not support the imposition of a duty upon the landlord. As said in *Goldberg v. Housing Auth. of Newark* (1962) 38 N.J. 578 [186 A.2d 291, 293]: 'Everyone can foresee the commission of crime virtually anywhere and at any time. If foreseeability itself gave rise to a duty to provide "police" protection for others, every residential

curtilage, every shop, every store, every manufacturing plant would have to be patrolled by the private arms of the owner. And since hijacking and attack upon occupants of motor vehicles are also foreseeable, it would be the duty of every motorist to provide armed protection for his passengers and the property of others. Of course, none of this is at all palatable.' This view is in conformity with *Rowland* v. *Christian, supra,* where the foreseeability of harm was designated as only *one* of the factors to be considered in the creation of a duty of care." (Italics added.)

■ Since the prior criminal activity shown herein to have occurred at defendant's service station was wholly dissimilar, in that it did not involve risk of injury, *Totten* constitutes authority that defendant was not reasonably required to anticipate it.

A landlord was held subject to liability to an apartment tenant who suffered a rape attack, allegedly as the result of inadequate security measures, in *O'Hara* v. *Western Seven Trees Corp.* (1977) 75 Cal.App. 3d 798 [142 Cal.Rptr. 487]. A judgment for defendant after general demurrer was sustained was reversed. The allegations, however, clearly satisfied the requirements specified in the above authorities to establish a duty. Plaintiff alleged that "several tenants" of the apartments had been raped before she rented, and the defendant owners had been "supplied by the local police with composite drawings of the suspect and a general description of his modus operandi." (*Id.,* at p. 802.) Moreover, defendants allegedly assured plaintiff "that the premises were safe and were patrolled at all times by professional guards." (*Ibid.*) The *O'Hara* court distinguished *Totten* upon the ground that in that case "[n]o similar incident had occurred before; the crime was an unpredictable, sudden outburst" (*id.,* at p. 803), whereas in *O'Hara,* defendants "allegedly knew of the past assaults and of conditions making future attacks likely" (*id.,* at p. 804). It is thus apparent that *O'Hara,* while deciding in favor of liability on totally different facts, recognizes the lack of duty to anticipate criminal attacks where there have been no prior similar incidents.

All of the foregoing authorities involved direct criminal attacks upon the plaintiff, whereas in the case at bench we have a criminal act indirectly injuring plaintiff by creating a hazardous condition of defendant's property of which it received no notice prior to the injury and thus had no opportunity to correct. In the absence of any such opportunity on the part of defendant, the sole cause of plaintiff's injury

was the acts of the unknown vandals. Plaintiffs have suggested no valid basis for distinguishing these two situations, and we see none.

The result of application of the foregoing rule under the facts of this case does not offend the instruction in *Rowland* that duty determinations be made on the basis of balancing the factors therein enumerated. In *Totten*, the court described this instruction as follows (63 Cal.App. 3d at p. 545): "The *Rowland* court instructs us that in determining whether the possessor of land owes a duty to the injured victims we must balance a number of considerations. Among these are: the foreseeability of harm to the plaintiff; the closeness of the connection between the defendant's conduct and the injury suffered; the moral blame attached to the defendant's conduct; the extent of the burden to the defendant and the consequences to the community of imposing a duty with resulting liability for breach; and the availability, cost and prevalence of insurance for the risk involved (*Rowland* v. *Christian, supra*, at p. 113). It has also been said that the *imposition of a duty is ultimately a question of fairness* and the inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution (*Goldberg* v. *Housing Auth. of Newark, supra*, [186 A.2d] at p. 293; see also Prosser on Torts (4th ed.) pp. 205 et seq., 324 et seq.)." (Italics in original.)

In the instant case, the harm, though foreseeable, was minimally so. There was no relationship between the vandals and either plaintiff or defendant. There was no close connection between the defendant's conduct and the injury suffered; the spillage was entirely the result of the third party's action, there being nothing inherently unstable or vulnerable about the barrels which were not so placed as to advertise their presence. The element of moral blame attached to defendant's conduct is virtually nonexistent. The oil was stored to satisfy conservation and environmental obligations of defendant.[1]

To require provision for tamperproof storage for such a low value waste product collected pursuant to such a policy would unfairly burden the businesses obliged to conserve this resource. To impose liability under the facts of this case would be virtually to make defendant the insurer of the safety of all persons who might be injured by this

[1]Public Resources Code, section 3463, provides: "It is the intent of the Legislature in enacting this article that used oil shall be collected and recycled to the maximum extent possible, by means which are economically feasible and environmentally sound, in order to conserve irreplaceable petroleum resources, preserve and enhance the quality of natural and human environments, and protect public health and welfare."

inherently beneficial activity. The economic burden thus involved far outweighs the apparent risk.

Since we conclude that the evidence does not show the breach of any duty of defendant toward plaintiffs, it is unnecessary to discuss plaintiffs' claim that there was no break in the chain of causation.

The judgment is affirmed.

Cobey, J., and Allport, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 11, 1981. Mosk, J., was of the opinion that the petition should be granted.