**Gaile NIXON, Individually and as Next Friend of Rhonda Marie Vanderburg, Appellant,**

v.

**MR. PROPERTY MANAGEMENT COMPANY, INC., and Brett Davis, Appellees.**

No. 05–83–00957–CV.

Court of Appeals of Texas, Dallas.

July 13, 1984.

Rehearing Denied Aug. 8, 1984.

**586**

Terry Hyatt, Law Offices of Windle Turley, Randall R. Moore, Law Offices of Windle Turley, Dallas, for appellant.

John M. Skrhak, Jr., Jackson, Walker, Winstead & Cantwell, Dallas, for appellee.

John Howard Stauffer, Dallas, ad litem.

Before CARVER, WHITHAM and STEWART, JJ.

CARVER, Justice.

Gaile Nixon, individually, and as next friend of Rhonda Marie Vanderburg, a minor, appeal from a summary judgment denying their claim for damages against Mr. Property Management Company, Inc., and Brett Davis, individually, and doing business under the trade name Chalmette Apartments, which claim urged that the owners and managers of the Chalmette Apartment were liable in tort when an unknown person abducted Rhonda elsewhere, but brought her into the Chalmette premises to rape her. We affirm.

The material facts appear from affidavits and depositions and are without substantial dispute. At about 7 p.m. on August 7, 1981, ten year old Rhonda went outside her grandmother's apartment (Landmark Apartments, across the street from the Chalmette Apartments) to summon her sister inside for supper. An unknown black man walked toward Rhonda; passed her; grabbed her from the rear; threatened to kill her if she made an outcry; walked her across the street and into Apartment 135 of Chalmette Apartments; raped her three times; and disappeared. Meanwhile Rhonda's mother and grandmother, worried about her extended absence, called the police. Officer Tilley intercepted Rhonda as she climbed out of a rear window of Apartment 135. The trial court sustained the summary judgment motion of the defense, and this appeal followed.

Nixon first complains that the trial court erred in holding that no legal duty was owed by Chalmette to Rhonda in these circumstances. Nixon concedes that Chalmette neither owed, nor breached, any traditional duties to Rhonda because she was neither (1) an "invitee" [see *Smith v. Henger*, 148 Tex. 456, 226 S.W.2d 425, 431 (1950); *Amoco Chemicals v. Sutton*, 551 S.W.2d 459 (Tex.Civ.App.—Eastland 1977, writ ref'd n.r.e.); *Atchison, Topeka & Sante Fe Ry. v. Smith*, 563 S.W.2d 660 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.) ]; nor (2) a "licensee" [see *Rowland v. City of Corpus Christi*, 620 S.W.2d 930 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); *Lower Neches Valley Auth. v. Murphy*, 536 S.W.2d 561 (Tex.1976) ]; nor even (3) a "trespasser" [*Texas-Louisiana Power Co. v. Webster*, 127 Tex. 126, 91 S.W.2d 302 (1936) ]. Nevertheless, Nixon argues that we should create a new duty to be owed by any property owner in a "high crime area" to exercise reasonable care toward persons on their premises, by volition not their own, to protect them against crime. Nixon cites the protection given either "invitees" or "licensees" against foreseeable crime in *Walkoviak v. Hilton Hotels Corp.*, 580 S.W.2d 623 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.); *Morris v. Barnette*, 553 S.W.2d 648 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.); and *Eastep v. Jack-in-the-Box*, 546 S.W.2d 116 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.); and urges that the same protection be given Rhonda who, while neither an "invitee" or "licensee" was not a "trespasser" either. We are unable to agree that Rhonda was not a trespasser merely because she entered Chalmette's property not on her own volition. Trespassing does not depend upon Rhonda's volition but upon knowledge and consent of Chalmette. In the absence of knowledge and consent by Chalmette to Rhonda's presence on their premises, Chalmette's duty toward Rhonda was no greater than not to injure her willfully, wantonly, or through gross negligence. *Burton*

*Const. & Shipbuilding Co. v. Broussard,* 154 Tex. 50, 273 S.W.2d 598, 603 (1954). We decline to expand the duty of a property owner to one who, by whose ever volition, is on the owner's property without the owner's knowledge or consent because the property owner can never know when such a duty might come into existence or the extent and degree of measures reasonably necessary to discharge that duty. Here, Rhonda's abduction occurred off Chalmette's premises, but the rape apparently occurred on Chalmette's premises. The abduction and rape constituted one criminal episode, the injury from which had nothing to do with property, or properties, contributing the geography of the episode. Chalmette had no greater duty than the public generally regarding the criminal episode which commenced outside its premises and was not caused by Chalmette. *See Portillo v. Housing Authority of the City of El Paso,* 652 S.W.2d 568, 569 (Tex.App.—El Paso 1982, no writ).

Our holding is consistent with *Totten v. More Oakland Residential Housing, Inc.,* 134 Cal.Rptr. 29 (Cal.App.1976) wherein a girlfriend of a tenant was in a laundry room of an apartment house when two strangers began shooting at one another, and a stray shot injured the girlfriend. *Totten* held:

> The question presented on appeal is one of first impression. Broadly defined it poses the issue of whether a landlord may be held liable for injuries caused to a stranger, who happens to be on the premises, by the criminal attack of other strangers. A careful analysis of common law principles relating to the tort liability of the possessor of land as well as the policy considerations laid down in *Rowland v. Christian* (1968) 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 and other cases lead us to the conclusion that in the situation here present the imposition of such a duty would be entirely unwarranted. In the absence of duty, a vital element of actionable negligence (*Richards v. Stanley* (1954) 43 Cal.2d 60, 63, 271 P.2d 23; *Nevarez v. Thriftimart, Inc.* (1970) 7 Cal.App.3d 799, 803, 87 Cal.

Rptr. 50), appellant's complaint failed to state a cause of action and the demurrer thereto was properly sustained by the trial court.

134 Cal.Rptr. at 32. In *Totten* it was also urged that, since the apartment house was in a "high crime area," a duty was owed to the girlfriend who was on the property without the knowledge or consent of the landlord. *Totten* held:

> It has been repeatedly held that in the absence of prior similar incidents, the landlord is not bound to anticipate the criminal activities of third persons, especially where, as here, the wrongdoers were complete strangers to both the landlord and the victim, and where the fight and the shooting incident leading to the injury came about precipitously.

134 Cal.Rptr. at 33.

Our holding is consistent with *City of Mobile v. Largay,* 346 So.2d 393 (Ala.1977) wherein a nineteen year old girl parked her car in a public parking space adjacent to an empty building owned by the city. As she left her car, she was attacked by an unidentified knife wielder who forced her back into the car. Unable to restart the car, her assailant dragged her into the city's vacant building where she was blindfolded, raped, and beaten. The Supreme Court of Alabama held that, although it had "grave doubts" as to whether the city breached any duty to the plaintiff, it would decide the case on the issue of proximate cause and held:

> The key here is foreseeability. This court has held many times that a person, who by some act or omission sets in motion a series of events, is not responsible for consequences of intervention of another agency, unless at the time of his original act or omission, the act of the intervening agency could reasonably be foreseen. If so, the causal chain is not broken. If the injury results from an independent intervening, efficient cause, not reasonably foreseeable, the original negligent act or omission is not the proximate cause of injury ...

We hold, as a matter of law, that the use of the unlocked cellar for the perpetration of rape was *not* a reasonably foreseeable consequence of the City's failure to maintain the building.

346 So.2d at 395.

■ Nixon also complains that, since Chalmette was shown in the record to have violated city ordinances requiring property owners to "keep doors and windows of a vacant structure or a vacant portion of a structure securely closed to prevent unauthorized entry" by leaving the door off its hinges in Apartment 135 (where Rhonda's rape occurred), both a "duty" as well as "negligence per se" had been shown which was the "proximate cause" of Rhonda's injuries; consequently, the summary judgment should be reversed. We disagree based on the reasoning set out in the opinion in *Largay* supra. We hold that the failure of Chalmette to have the door of Apartment 135 on its hinges was not a "proximate cause" of Rhonda's abduction elsewhere, and such failure was not a "proximate cause" of Rhonda's rape in the course of her abduction, because Rhonda's abduction and rape could not be reasonably forseen as a consequence of the failure to keep the door on its hinges.

■ Nixon lastly complains that the summary judgment was entered without allowing her time for additional discovery. The record reflects that the motion for summary judgment was filed January 5, 1983. Nixon filed an unsworn response February 11, including a paragraph which urged that the motion was premature because Nixon wished to develop evidence "to show that certain units of Chalmette Apartments had been vacant for some time with insufficient security to prevent unauthorized entry into these units and that the area had a high crime incident rate and such activity was known or should have been known to the defendants and potential criminal activity in this unsecured premises was reasonably foreseeable." Subsequent to this response depositions were in fact taken of Mrs. Nixon; Mrs. Newman, Rhonda's grandmother; the maintenance man

Mr. Smith; the president of Mr. Property, Mr. Jacobson; and the owner of Chalmette Apartments, Mr. Davis. Further, affidavits of the investigating officer, Rhonda, and Nixon's attorney were taken and filed. The motion for summary judgment was presented on March 3, 1983, with both sides announcing ready. If we treat Nixon's unsworn response as a motion for continuance, it was inadequate for such purpose under TEX.R.CIV.P. 166. Nevertheless, time was allowed for Nixon to secure five depositions and three affidavits, and no additional motion complained that Nixon still needed more discovery. In any event, Nixon's announcement of ready waived any request for postponement that might be deemed pending. Before this court, Nixon fails to offer any argument or authorities to show how error occurred in this sequence of events, and we find none. *See* TEX.R.CIV.P. 418(3).

Affirmed.