SOL SHERMAN et al., Appellants, *v.* CONCOURSE REALTY CORPORATION, Respondent.

Second Department, March 10, 1975.

*Ivan L. Tantleff (Benjamin H. Siff* and *Thomas R. Newman* of counsel), for appellants.

*Harold M. Foster (William F. McNulty* and *Anthony J. Mc-Nulty* of counsel), for respondent.

CHRIST, J. In this negligence action the basic issue is whether a landlord's negligent maintenance of residential premises may be the predicate for holding him liable in tort for personal injuries inflicted upon a tenant by a criminal intruder in a common area of the premises.

Plaintiff Sol Sherman, the tenant, sustained personal injuries when he was assaulted and robbed by an unidentified assailant in the lobby of the multiple dwelling owned by the defendant landlord. For a week prior to this incident the lobby entrance door was in defective condition for the reason, as alleged in the complaint, that the landlord had caused the door lock (actually the cylinder) to be removed, apparently for repair, thus leaving " the plaintiff and others  *  *  * exposed " to peril. The landlord's removal of the cylinder from the lobby entrance door rendered inoperative the building's security buzzer system which had been installed as one of the conditions for a rent increase. The tenant's testimony, if credited by the jury, established that the assailant entered the building through the lobby entrance door.

At the conclusion of the plaintiffs' case the trial court stated that the testimony established the landlord's negligence in maintenance of the building's security buzzer system and that there had been many instances of crime committed in the building and the surrounding area, but nevertheless dismissed the complaint on the ground that the evidence presented was insufficient to establish that the landlord's negligence was the proximate cause of the tenant's injury. We disagree. The judgment should be reversed and a new trial granted.

The defendant, Concourse Realty Corporation, is the owner of 1555 Grand Concourse, a six-story multiple dwelling, housing approximately 200 tenants, in which the injured plaintiff resides with his wife. The landlord stipulated during the trial that prior to the assault and robbery of the tenant the New York City Rent and Rehabilitation Administration had granted permission to increase rents in the building, conditional in part, upon the landlord's installation of a protective buzzer system. The system consists of locks and buzzers controlling the doors

leading to the common hallways. It was stipulated that this tenant's rent was increased to pay for this protection.

To establish that the landlord had notice of prior criminal activity in the building the tenant introduced into evidence a signed notice which the landlord had posted over the mailboxes. It provided in pertinent part:

" Notice to all tenants: There have been several robberies in this building in recent weeks due to strangers and thieves getting in through the front door. It is imperative that all tenants use the intercom system to learn who is ringing their bell before they ring back. This system was put in for your protection. * * *

" Also, when you enter the building using your own key at the lobby door, if someone or a stranger attempts to enter at the same time, please report it to the superintendent at once because a thief can gain access to the building."

The uncontroverted evidence established that for at least a week prior to the incident the lock on the lobby entrance door was inoperative, thus permitting unimpeded entry into the building. The landlord had actual notice of the defective condition, as the allegations of the complaint, which were not challenged or disproven on the trial, alleged that the landlord had caused the cylinder to be removed. The tenant testified that the assault and robbery occurred on September 5, 1969 at about 10:15 P.M. in the building lobby. Specifically, he described the incident as follows: " I pushed the door [referring to the lobby entrance door with the defective lock] open. I walked in. The door closed behind me. I continued walking. *Then the door opened and closed behind me.* I reached the elevator, pushed the button, and in a split second, before I knew it, somebody came up behind me and knocked me down and fractured my hip and grabbed me from behind " (emphasis and bracketed matter supplied).

At the conclusion of the tenant's case the trial court dismissed the complaint, opining that the evidence presented was equally consistent with the view that the assault and robbery could have been committed by someone other than an intruder, thus eliminating the inoperative lobby entrance door lock as a factor in the chain of causation.

On this appeal the contention raised on behalf of the tenant is that the evidence was sufficient to permit the jury to conclude that the assailant was an intruder who entered through the lobby door containing the defective lock. Counsel for the landlord counters this argument by contending, in his brief, that

assuming, *arguendo,* " that the proof   *   *   *   was sufficient to establish that the unidentified assailant gained access *   *   *   through the lobby door   *   *   *   the claimed negligence of the   *   *   *   landlord in failing to repair the broken lock on the lobby door was not a proximate cause of the assault and robbery " of the tenant. This last contention is the crux of the case.

As to the tenant's contention, it is clear that the tenant's testimony, if credited by the jury, constituted sufficient circumstantial evidence from which the jury could reasonably infer that the assailant was an intruder who entered the lobby by pushing open the lockless lobby entrance door. The tenant presented no direct evidence that the assailant entered through the lobby entrance door, but his testimony tended to establish that after he entered he heard the lobby door open and close behind him and that a " split second " later he was assaulted. It is basic that circumstantial evidence consists of proof of collateral facts from which the fact or facts in issue may indirectly be established (see, generally, Richardson, Evidence [10th ed.], § 145; 29 Am. Jur. 2d Evidence, § 264). In *Spett* v. *President Monroe Bldg. & Mfg. Corp.* (19 N Y 2d 203, 205) the Court of Appeals aptly stated: " ' Circumstantial evidence is sufficient if it supports the inference of causation or negligence even though it does not negative the existence of *remote* possibilities that injury was not caused by the defendant or that the defendant was not negligent ' " (emphasis in original). In the instant case the tenant's testimony amply established the threshold of proof to make resolution of the manner of the assailant's entry a jury question.

Of greater weight is the landlord's contention, i.e., that the landlord's negligence in failing to repair the defective lobby entrance door lock could not be viewed as the proximate cause of the assault and robbery committed upon the tenant. In support of this position counsel for the landlord cites *Horney* v. *World Is. Estates* (20 A D 2d 849, affd. 15 N Y 2d 564); *Smith* v. *ABC Realty Co.* (71 Misc 2d 384, revg. 66 Misc 2d 276); *Hall* v. *Fraknoi* (69 Misc 2d 470); *Tirado* v. *Lubarsky* (49 Misc 2d 543, affd. 52 Misc 2d 527). A review of the cases is helpful to a consideration of the problem presented.

In *Horney* v. *World Is. Estates* (*supra*), the plaintiff tenants were injured by an unidentified intruder who had entered their apartment in the defendant landlord's multiple dwelling. The plaintiffs sought recovery against the landlord, apparently alleging that the landlord's negligence in maintaining a con-

crete base (the housing part of a chimney pipe) under their living room window was a substantial factor contributing to the entry of the assailant. The Court of Appeals affirmed, without opinion, the First Department's affirmance of a dismissal of the complaint and the Reporter's syllabus indicates agreement with a finding of the trial court that "the record was barren of any proof to indicate that defendant could have reasonably foreseen the commission of said crimes and should have taken precautionary measures of prevention" (*supra*, 565).

In *Tirado* v. *Lubarsky* (49 Misc 2d 543, affd. 52 Misc 2d 527, *supra*) a tenant brought suit against the landlord, *inter alia*, for personal injuries sustained when his ground floor apartment was burglarized and he was assaulted. The tenant alleged that he had notified the landlord that the lock on his front door was defective and that the landlord had failed to repair it. Judgment was entered for the landlord, the trial court stating (p. 544): "Under ordinary circumstances no one is chargeable with damages because he has not anticipated a crime by some third party. To be actionable the negligence complained of must not only involve the breach of some legal duty which the defendant owes to the plaintiff, but it must also proximately result in the injury claimed by plaintiff."

In *Smith* v. *ABC Realty Co.* (71 Misc 2d 384, revg. 66 Misc 2d 276, *supra*), the plaintiff tenant lived on the top floor of a five-story walk-up in a high-crime area. Her bedroom window fronted on a platform of a fire escape which led from the roof to the ground. On June 20, 1969, she was raped by an intruder. The evidence established that two weeks prior to the incident a piece of glass about 6 inches by 3 inches was cut from the plaintiff's bedroom window adjacent to the window latch and that she had made numerous unsuccessful demands to the resident superintendent for repair. The judgment of the Civil Court of the City of New York (STECHER, J.) in favor of the plaintiff was reversed for lack of proof that the landlord's negligence was the proximate cause of the tenant's injuries.

The above-cited cases are not authority for the proposition that a landlord's negligence under all circumstances may not be viewed as the proximate cause for the criminal act of an intruder, but rather represent judicial determinations made upon the particular facts of each case. To the extent that these cases appear to hold otherwise, their reasoning is now rejected by this court.

In the instant case the landlord had actual knowledge of the criminal activities which occurred and were likely to reoccur within the building. For a monetary consideration, i.e., increased rent, the landlord assumed a limited duty of protection by the installation of the bell and buzzer system which was permitted to fall into disrepair. The fact that the immediate cause of the tenant's injury was the act of a third party, i.e., a criminal intruder, does not prevent the landlord's negligence from being regarded in contemplation of law as the *proximate cause* (*Lillie* v. *Thompson*, 332 U. S. 459, revg. 162 F. 2d 716; *Abbott* v. *New York Public Library*, 263 App. Div. 314; cf. *Bass* v. *City of New York*, 38 A D 2d 407, 418 [dissenting opn. by GULOTTA, J.], affd. 32 N Y 2d 894; *Bartkowiak* v. *St. Adalbert's R. C. Church Soc.*, 40 A D 2d 306; *Mangione* v. *Dimino*, 39 A D 2d 128). The landlord's neglect here " gave rise to the stream of events that culminated in " the tenant's injuries (*Matter of Guardian Cas. Co.* [*Kuttler*], 253 App. Div. 360, 362, affd. 278 N. Y. 674). The rule applicable to the instant case is expressed in Restatement, Torts 2d (§ 449) as follows:

" Tortious or Criminal Acts the Probability of Which Makes Actor's Conduct Negligent

" If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."

In essence, *proximate cause* represents a policy decision by which it is determined how far removed an *effect* may be from its *cause in fact* for the actor nevertheless to be held legally responsible. The landlord's contention that its negligence could not constitute the proximate cause of the tenant's injuries is meritless. In *Lillie* v. *Thompson* (332 U. S. 459, revg. 162 F. 2d 716, *supra*) the petitioner sued under the Federal Employers' Liability Act (U. S. Code, tit. 45, § 51), alleging that the injuries she received as a result of an assault by an unknown assailant had been caused by the employer's negligence in sending her to work in a place known to be unsafe, without taking protective measures. The District Court dismissed the petition stating, *inter alia*, that the law does not permit recovery for the criminal acts of an outsider. The Circuit Court of Appeals affirmed, but the Supreme Court reversed, stating (p. 462):

" That the foreseeable danger was from intentional or criminal misconduct is irrelevant; respondent nonetheless had a duty

to make reasonable provision against it. Breach of that duty would be negligence, and we cannot say as a matter of law that petitioner's injury did not result at least in part from such negligence."

*Hall* v. *Fraknoi* (69 Misc 2d 470, *supra*), the last case cited in support of the landlord's position, held that the landlord-tenant relationship does not create by implication an obligation on the part of the landlord to provide security to tenants against the criminal acts of third parties. *Hall* is immediately distinguishable from the instant case where the landlord, for a consideration, assumed the duty of providing a bell and buzzer system to protect against the hazard of criminal intruders.

This court notes with interest the recent case of *Kline* v. *1500 Massachusetts Ave. Apt. Corp.* (439 F. 2d 477), in which the United States Court of Appeals for the District of Columbia held that a landlord is under a duty to protect tenants against the foreseeable criminal acts of third parties. Judge WILKEY's opinion in *Kline* stressed that the landlord in modern urban society stands in a special relationship to his residential tenants analogous to the innkeeper-guest relationship of prior days; and, although he conceded that " the landlord is no insurer of his tenants' safety ", he said that, where the landlord has notice of criminal occurrences " in the portion of the premises exclusively within his control " which are likely to recur, " and has the exclusive power to take preventive action, it does not seem unfair to place upon the landlord a duty to take those steps which are within his power to minimize the predictable risk to his tenants " (p. 481; *contra,* see *Goldberg* v. *Housing Auth. of City of Newark,* 38 N. J. 578). Although we do not have occasion to reach here the issue decided in the *Kline* case, we note that the reasoning and result there have been well received by the commentators (see Landlord's Obligation to Protect Tenant Against Criminal Activities of Third Persons, Ann. 43 ALR 3d 331; Torts — Landlord-Tenant Relations — Landlord Has Duty To Take Reasonable Precautions To Protect His Tenants Against Crimnal Act of Third Parties — *Kline* v. *1500 Massachusetts Ave. Apt. Corp.,* 45 N. Y. U. L. Rev. 943; Emerging Landlord Liability: A Judicial Reevaluation Of Tenant Remedies, 37 Brooklyn L. Rev. 387, 394; Landlord-Tenant Law: Landlord Held Negligent for Criminal Assault by Third Party Intruder on Tenant, 55 Minn. L. Rev. 1097; The Uniform Residential Landlord and Tenant Act: New Hope For the Beleaguered Tenant, 48 St. John's L. Rev. 546, 554).

Accordingly, the judgment should be reversed, on the law, and a new trial granted, with costs to abide the event.

HOPKINS, Acting P. J., LATHAM, BENJAMIN and MUNDER, JJ., concur.

Judgment of the Supreme Court, Kings County, entered July 15, 1974, reversed, on the law, and new trial granted, with costs to abide the event. The appeal presented no questions of fact.