■ In the Matter of YONKERS GARDEN Co. et al., Petitioners, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL et al., Respondents.—Proceeding pursuant to CPLR article 78 to review an order of the respondent New York State Division of Housing and Community Renewal (Division), dated February 16, 1977 (and made pursuant to subdivision a of section 7 of the Emergency Tenant Protection Act of 1974 [L 1974, ch 576, § 4] and section 44 of the Tenant Protection Regulations issued thereunder), which (1) found that petitioners failed to maintain services previously certified, (2) reduced the legal regulated rents to the level in effect prior to the 1974 and 1975 rent guideline adjustments under one-, two- and three-year leases, (3) directed that such reduced level of rents be effective July 1, 1975 and (4) directed that the petitioners landlords refund to the tenants (in cash or credit against future rents) all rents collected in excess of the legal regulated rents (as reduced by the order), for the period between July 1, 1975 and November 30, 1975. Petition granted to the extent that the determination is modified, on the law, by (1) deleting from the decretal paragraph thereof all words beginning with "and that such reduced level of rents" and ending with "November 30, 1975" and (2) substituting therefor the following provision: "and that such reduced level of rents is effective on the first rent payment date after the August 11, 1975 City of Yonkers Bureau of Housing and Buildings inspection, on which that bureau's August 14, 1975 notice of violation list was based. The landlord is directed to refund to the tenants in cash or credit against future rents all rents collected in excess of the legal regulated rents, as reduced by this order, between the first rent payment date after August 11, 1975, and October 15, 1975." As so modified, determination confirmed and proceeding otherwise dismissed on the merits, without costs or disbursements, and matter remitted to the respondent Division for further proceedings consistent herewith, including appropriate rent adjustment notifications to the tenants and petitioners. This proceeding centers upon the application of certain maintenance of service provisions of the Emergency Tenant Protection Act of 1974 (ETPA) and the Tenant Protection Regulations issued thereunder. The proceeding involves five apartment buildings containing 780 tenants. The core issues are (1) whether the petitioners failed to maintain services which, in order to obtain rent guideline increases, they had certified were being maintained and (2) assuming, arguendo, that it were established that the certified services had not been maintained, whether the sanction imposed by the division—a five-month rollback of rent guideline increases—was lawful and not arbitrary, capricious or an abuse of discretion. As of July 1, 1975 some 328 apartments within the subject premises had become "rent-stabilized"

under the ETPA (i.e., the leases were signed on or after the effective date of the ETPA in Yonkers) and said figure increased month by month to 428 during the five-month period of July 1, 1975 to November 30, 1975, due to the expiration of other pre-existing leases in the premises. Out of the 780 tenants, 46 filed written "Tenant's Statements of Complaint" with the Division, setting forth grievances with respect to lack of services at the premises. These complaints were filed in or about June and July, 1975. After ensuing administrative proceedings, the Division, on October 3, 1975, issued an order rolling back rent guideline increases. The order provided: "Notice has been previously given to the parties that orders were proposed to be issued pursuant to Section 44 of the Tenant Protection Regulations, as adopted and promulgated pursuant to the Emergency Tenant Protection Act granting the tenants' applications, and reducing the legal regulated rents on the alleged grounds that the owner has failed to maintain services as certified under the act. Thereafter, two hearings were conducted for the taking of evidence from the tenants and landlord. *Prior to the second hearing, copy of Notice of Housing Violations, dated August 14, 1975 by the City of Yonkers Housing Manager to the owner based upon inspection on August 11, was filed on August 25, 1975 by the tenant representative. At the hearing, the owner submitted statements that he had ordered the work to correct the violations, and letters were thereafter filed relating to contracts for the work having been entered by the owner. The State Division has not received any notices or evidence that the violations have been corrected.* Therefore, *based upon the record it is determined that the owner and landlord did fail to maintain services required to be furnished* by law, ordinance, or regulation of the City of Yonkers applicable to the premises, in violation of the certificate filed pursuant to the requirements of the Emergency Tenant Protection Act and the Tenant Protection Regulations, thereunder, and *that the evidence sustains the applications and complaints of tenants as filed in June, 1975.* It is hereby ordered that pursuant to the requirements of section 7 of the Emergency Tenant Protection Act and section 44 of the Tenant Protection Regulations thereunder the legal regulated *rents are reduced* to the level in effect prior to adjustments by the 1974 or 1975 Guidelines under 1, 2 or 3 year leases; *that such reduced level of rents is effective on July 1, 1975 the first rent payment date after receipt of the tenant applications and shall continue in effect until the landlord and owner has complied with the requirements of the applicable law,* ordinance, or regulation of the City of Yonkers, has filed a written certification * * * with the State Division and application for orders restoring the legal regulated rents to the levels otherwise authorized by the Act and Regulations, and obtained such orders pursuant to the procedure set forth in Tenant Protection Bulletin No. 2. The landlord and owner is directed to *refund* to the tenants all rents collected in excess of the legal regulated rents as reduced by this order since July 1, 1975 in cash or credit against future rents." (Emphasis supplied.) By letter dated October 15, 1975, 12 days after the rollback order, the City of Yonkers Housing Manager advised the managing agent for the five buildings owned by the petitioners that: "It is a pleasure to inform you that the housing notices for the above captioned premises and dated August 14 and September 15, 1975 have been complied with and your cooperation in this matter is appreciated. It is noted that although none of the violations as listed had been determined to be dangerous, a significant expenditure of effort and money had to be used to effect a compliance in such an expeditious manner." The official violations having been corrected by October 15, 1975, the petitioners, on or about November 7,

1975, applied to the Division for restoration of the rents to the then current guideline levels. The Division then investigated to determine whether the violations had in fact been corrected and whether any new violations had been filed. On January 26, 1976 the Division issued an order restoring, as of December 1, 1975, the subject guideline increases. The order states, in pertinent part: "By reason of answers by many tenants complaining of continued failure to maintain services required by law, the State Division by letter to the City Bureau requested that it notify the Division directly of its findings. By letter dated January 15, 1976, the City Bureau submitted that its letter dated October 15, 1975 indicating that all outstanding violations were removed, was in full force and effect. An account of subsequent complaints received from tenants was also provided which disclosed no significant violations of law to be on record. The landlord and owner is therefore found to be in compliance with Section 42 of the Regulations and may collect rent guideline adjustments pursuant to leases, *commencing December 1, 1975, the first date following the filing of the owners application for restoration."* (Emphasis supplied.) The Division's aforesaid January 26, 1976 rent restoration order, therefore, fixed the period of rent abatement to the five-month period of July 1, 1975 to November 30, 1975. This resulted in rent losses to petitioners of $66,016.20. On or about February 10, 1976, petitioners instituted a CPLR article 78 proceeding to review the Division's rent reduction determination of October 3, 1975. That article 78 proceeding resulted in an order of this court, dated June 28, 1976, which annulled the Division's October 3, 1975 determination and remanded the matter to the Division for a full hearing and new determination in accordance with our decision, which, in pertinent part, provides *(Matter of Yonkers Garden Co. v New York State Div. of Housing & Community Renewal,* 53 AD2d 697, 698): "In the absence of a record, this court is unable to decide the propriety of the order sought to be reviewed. A new hearing should therefore be held and a record made (narrative or otherwise) which can be reviewed by this court. At such hearing there should be a full opportunity for examination and cross-examination. The ensuing determination should also include a statement as to what violations, if any, respondents have found, so that this court can correctly determine whether the amount of the rent rollback was proper. *At this point, based on the inadequate record before us, it appears that the loss of approximately $66,000 suffered by the petitioners may have been too harsh a penalty."* (Emphasis supplied.) At the hearing held pursuant to the remand, of the 780 tenants of the subject buildings, tenants from only four apartments testified, and no tenants from two of the five buildings testified. The remand hearing, and the evidence submitted in connection therewith, resulted in the order of the Division now under review. That order confirmed the guideline increase rollback for the period of July 1, 1975 to November 30, 1975. The core of the "liability" and "penalty" portions of the Division's order are: Liability: "After an examination of the entire record, including the Report of Hearing, the Commissioner finds that the owner and landlord failed to maintain services required to be furnished by law, ordinances or regulations of the City of Yonkers applicable to the premises, in violation of the certificate filed pursuant to the requirements of the Emergency Tenant Protection Act and the Tenant Protection Regulations, issued thereunder, and that rents should be adjusted as set forth below. It is undisputed and the *Commissioner so finds that the violations of record set forth above were in existence from August 14, 1975 to October 15, 1975 and that some of the violations, particularly the defective locking devices for the exterior doors and the absence of a functioning buzzer*

*release system, are particularly serious. They go to the heart of building security. It was also established by the testimony of the tenants and by the prior record that these conditions had been in existence for several years. It is significant to note that most of the 46 tenants who previously filed written complaints on or about June 20, 1975 complained of lobby security and conditions."* (Emphasis supplied.) Penalty: "ORDERED, that pursuant to Section 7a of the Emergency Tenant Protection Act and Section 44 of the Tenant Protection Regulations issued thereunder, the legal regulated rents are reduced to the level in effect prior to adjustments by the 1974 and 1975 Guidelines under one (1), two (2) and three (3) year leases; and that such reduced level of rents is effective on July 1, 1975, the first rent payment date after receipt of the tenant applications. *The landlord is directed to refund to the tenants in cash or credit against future rents all rents collected in excess of the legal regulated rents, as reduced by this order, between July 1, 1975 and November 30, 1975."* (Emphasis supplied.) In our opinion, the "liability" determination should be confirmed. We find that it was clearly within the statutory jurisdiction and power of the division, was not made in violation of lawful procedure, was not affected by any error of law and was not arbitrary, capricious or an abuse of discretion (see CPLR 7803, subds 3, 4). In effect, the Division compared the written complaints of 46 tenants with an inspection by the City of Yonkers Bureau of Housing and Buildings (Bureau) and, on the remand, proceeded essentially on the basis of the violations that were found to exist by the Bureau on its inspection of August 11, 1975. The Division acted on the basis of: (1) the written complaints of the tenants which were substantiated by the Bureau's inspection and (2) sworn testimony at the remand hearing. The "liability" finding was supported not merely by the Bureau inspection, but also by tenant testimony at the remand hearing and certain admissions by building superintendents of all five buildings, which indicated (albeit through no fault of the petitioners) that the "security defects" existed in all five buildings. Thus, there was substantial evidence to support the resolution of all questions of fact and credibility in favor of the tenants. We note, further, that although the Bureau did not deem the violations on its list to be hazardous, the ETPA does not restrict the rollback to only those situations where the failure to maintain certified services places the tenants in jeopardy. The Division's conclusion that the exterior door lock and buzzer release defects "go to the heart of building security" is clearly reasonable. In this connection, we note this court's decision in *Sherman v Concourse Realty Corp.* (47 AD2d 134). In that case, a negligence action, we held that a landlord's negligent maintenance of residential premises may be the predicate for holding the landlord liable in tort for personal injuries inflicted upon a tenant by a criminal intruder in a common area of the premises. The "negligent maintenance" was the "removal of the cylinder from the lobby entrance door [which] rendered inoperative the building's security buzzer system which had been installed as one of the conditions for a rent increase" (p 135). We hold however, that the penalty imposed here by the Division was not authorized by the ETPA and, assuming, *arguendo*, that it were, the Division abused its discretion. The Division found, and it is largely uncontroverted, that the subject violations had been corrected by October 15, 1975. Accordingly, under the facts of this case, the Division could not properly or fairly assess the petitioners with a rollback penalty for any period beyond that date. Under the instant circumstances, the petitioners' restoration application of November 7, 1975 was made with sufficient dispatch and, if the Division had discretionary power, it was an abuse of

that discretion to continue the rollback for the period after October 15, 1975, during most of which the Division was investigating whether the violations had in fact been corrected as stated by the Bureau's letter of October 15, 1975. The record indicates that the tenants' complaints relating to "security", made to the Division prior to the Bureau inspection of August 11, 1975, were so vigorously contested by the petitioners that the Division apparently did not deem them sufficiently "established" until the inspection. In view of the petitioners' prior good record and the testimony that the lobby security problems were caused by the tenants, the petitioners were entitled to rely on the inspection of August 11 as the "starting point" from which they should be held accountable. In the circumstances of this case, where the determination of liability was largely dependent upon the Bureau inspection, which inspection provides the only exact date fixing the failure to maintain services, it was an abuse of discretion to commence the rent rollback at a date earlier than the inspection. In addition, establishing July 1, 1975 as the commencement date of the rent rollback is directly contrary to the Division's determination in an earlier case involving Bryn Mawr Ridge, Inc.* The record in this proceeding shows that in the *Bryn Mawr* matter, tenant complaints to the Division were followed by a Bureau inspection on August 11, 1975. On August 22, 1975 the Bureau advised the Division that "housing violations were found to be outstanding following the inspection * * * on August 11, 1975." On September 30, 1975 the Division (in *Bryn Mawr)* made a rent reduction order providing that: "said reduced level of rents is effective *from the first rent payment date after August 11, 1975* and shall continue in effect until the landlord and owner has complied with the requirements of the applicable law." (Emphasis supplied.) Finally, we note that section 86 of the Tenant Protection Regulations provides: "Final determination The Division, on such terms and conditions as it may determine, may: 1. Dismiss the application if it fails substantially to comply with the provisions of the Act or these Regulations. 2. Grant or deny the application, in whole or *in part.* 3. Issue an *appropriate* order in a proceeding instituted on its own initiative." (Emphasis supplied.) This clearly indicates that the Division has substantial discretion. As noted by the petitioners: "The new hearing was even more poorly attended by tenants than the two hearings prior to Appellate Division reversal. That is, tenants from only *four* of the 780 apartments within the Premises attended the hearing. The four represented only $434 (or about 1/150th) of the five month, across-the-board $66,000 rent reductions entered by Respondent in its first order * * * and exactly $155.78 (or about 1/423rd) of the $66,000 reduction on the basis of a two-month computation—for September and October 1975". This, in conjunction with the landlord's prior good record, indicates that the imposition of a rent rollback from July 1, 1975 to November 30, 1975 is shocking to one's sense of fairness (cf. *Matter of Pell v Board of Educ.,* 34 NY2d 222). Accordingly, while we sustain the finding that the subject lock and busser release violations "go to the heart of building security", we find that the penalty imposed was improper to the extent indicated herein. Damiani, J. P., Suozzi, Rabin and Shapiro, JJ., concur.

---

* We note that the Division, in support of its reliance upon Bureau records of violations, cites the opinion of Special Term in the proceeding to review the Division's *Bryn Mawr* decision *(Bryn Mawr Ridge v State Rent Administrator,* NYLJ, Dec. 30, 1975, p 12, col 4). The Division notes, with respect to *Bryn Mawr,* that "notice of appeal filed in December, 1975, but not perfected to date and barred by Rule 670.20 (f)".