■ Doris Delacy, Respondent, v Frank Ettrich et al., Defendants, and Edna Lockwood, Appellant, and New York State Department of Environmental Conservation, Respondent. [629 NYS2d 521] —Casey, J. Appeal from an order of the Supreme Court (Ingraham, J.), entered July 19, 1994 in Chenango County, which, *inter alia*, granted motions by plaintiff and defendant Department of Environmental Conservation for summary judgment against defendants Frank Ettrich, Edna Lockwood and Indian Country, Inc.

The only issue on this appeal is whether the evidence in the record is sufficient to establish as a matter of law that more than 1,000 tons of bluestone were mined in any 12 consecutive months during the period from August 1982, when defendant Joseph Pavalone began mining bluestone on property then owned by defendant Edna Lockwood (hereinafter defendant), until Pavalone's mining operation ceased near the end of 1985. If the 1,000-ton threshold was exceeded during any 12-month period, the mining operation was subject to the requirements of the State Mined Land Reclamation Law (*see*, ECL art 23) as it existed prior to its substantial revision in 1991 (*see, e.g.*, ECL former 23-2711 [1]). Defendant contends that although there is undisputed evidence that more than 1,000 tons of bluestone mined from the property were sold in a 12-month period, a question of fact remains as to whether more than 1,000 tons of bluestone were actually mined during a 12-month period.

The only evidence of the amount of bluestone mined from the property during the period at issue are invoices and ledger sheets prepared by Pavalone and defendant, which established the amount of royalties Pavalone paid to defendant based on the square footage of bluestone sold by Pavalone. Joseph Moskiewicz, employed as a mined land reclamation specialist by respondent Department of Environmental Conservation, calculated the volume of bluestone sold by using the dimensions of the individual pieces described in the records. Moskiewicz then calculated the weight of the bluestone based upon its density. Moskiewicz's calculations revealed that more than 1,000 tons had been sold in two different 12-month periods, one beginning in January 1984 and a second beginning in June 1984.

Defendant does not dispute the validity or accuracy of Moskiewicz's methodology, but instead contends that evidence of the amount of bluestone sold during a particular 12-month period does not establish the amount of bluestone mined during that 12-month period. It is possible, defendant argues, that the bluestone was actually mined at a prior time and stockpiled, so that the 1,000-ton threshold was never exceeded in any 12-month period. Thus, according to defendant, it would be illogical to conclude that an operator mined more than 1,000 tons in a 12-month period when the material was mined and stockpiled at a rate of 500 tons per year and 1,500 tons were sold at the end of the third year.

"[C]ircumstantial evidence consists of proof of collateral facts from which the fact or facts in issue may indirectly be established" (*Sherman v Concourse Realty Corp.*, 47 AD2d 134, 137). Circumstantial evidence is sufficient if it supports the particular inference even though it does not negate the existence of remote possibilities which are inconsistent with the inference (*see, e.g., Spett v President Monroe Bldg. & Mfg. Corp.*, 19 NY2d 203, 205). We are of the view that evidence of the sale of more than 1,000 tons of bluestone in a 12-month period supports the inference that more than 1,000 tons of bluestone were mined in a 12-month period. It is undisputed that Pavalone sold 2,688 tons of bluestone, all of which were mined during a period which encompasses four months in 1982, all of 1983 and 1984, and 1985 through the end of the mining operation in the late fall or early winter of that year. Accordingly, it was mathematically possible that the bluestone was mined at a rate of approximately 800 tons per 12-month period, but we are of the view that such a possibility does not, in and of itself, render the circumstantial evidence concerning the sale of the bluestone insufficient to support the inference that more than 1,000 tons was mined in a 12-month period. We conclude, therefore, that the evidence of the sale of more than 1,000 tons of bluestone during one or more 12-month periods was, in the circumstances of this case, sufficient to meet the burden of the proponents of the summary judgment motion (*see, Zuckerman v City of New York*, 49 NY2d 557).

Defendant contends that she submitted sufficient evidence regarding the stockpiling of the bluestone to raise a question of fact on the issue of whether more than 1,000 tons were mined in a 12-month period. Defendant submitted evidentiary proof that stockpiling of bluestone occurred and that the bluestone sold during a particular period was not necessarily mined during that particular period. In regard to defendant's submission,

Moskiewicz submitted a reply affidavit which established that more than 1,000 tons of bluestone had been sold in two 12-month periods other than the period beginning in January 1984. We are of the view that defendant's evidence of stockpiling does not affect the sufficiency of the circumstantial evidence presented by Moskiewicz because the mere fact that bluestone was stockpiled does not imply that it was mined at a rate that never exceeded 1,000 tons per 12-month period.

Attached to defendant's brief is a graph which purportedly summarizes the evidence of Pavalone's mining operation, but the graph was not submitted to Supreme Court. In any event, the graph is patently inaccurate and reveals the lack of merit in defendant's claim. The graph shows that Pavalone mined nearly 100 tons of bluestone in 1986, but defendant testified that Pavalone's mining operation ceased in the late fall or early winter of 1985. Pavalone continued to sell the bluestone into 1986, but he did no mining in 1986. The graph is based upon the amounts purportedly mined in each calendar year, but the relevant issue is whether more than 1,000 tons of bluestone were mined in *any* 12-month period. The graph shows the cumulative totals mined by Pavalone as of the end of each calendar year. By connecting these points with a straight line, defendant suggests that the bluestone was mined at a uniform rate throughout each calendar year. The undisputed evidence in the record, however, establishes that the mining was not done at a uniform rate.

Based upon our review of the record, we agree with Supreme Court that defendant's allegations in opposition to the motion for summary judgment are "vague and conclusory". The only relevant factual data regarding the extraction of bluestone is contained in the invoices and ledger sheets, which support the inference that more than 1,000 tons of bluestone were mined in one or more 12-month periods. Defendant's vague recollection that large amounts of bluestone were stockpiled is not inconsistent with the conclusion that the 1,000-ton threshold was exceeded, and her attempts to manipulate the dates and figures shown in the records are insufficient to create a question of fact. Supreme Court's order should be affirmed.

Mercure, J. P., Crew III, Yesawich Jr. and Spain, JJ., concur. Ordered that the order is affirmed, with costs to plaintiff.