■ NANCY HOWARD-SEAY et al., Appellants, v DORCHESTER TOWERS ASSOCIATES et al., Defendants and Third-Party Plaintiffs-Respondents. FRANK BRANDT BELL & INTERCOM CORP., Third-Party Defendant-Respondent. [642 NYS2d 945] —In an action to recover damages for personal injuries, etc., the plaintiffs appeal from an order of the Supreme Court, Kings County (Held, J.), entered December 20, 1994, which (1) granted the defendants third-party plaintiffs' motion for summary judgment dismissing the complaint and (2) granted the separate motion of the third-party defendant for summary judgment dismissing the complaint and the third-party complaint.

Ordered that the order is affirmed, with one bill of costs payable to the respondents appearing separately and filing separate briefs.

"To recover damages from an owner of real property for injuries caused by the acts of criminals on the premises, a plaintiff must produce evidence indicating that the owner knew

or should have known of the probability of conduct on the part of third persons which was likely to endanger the safety of those lawfully on the premises" (*Francis v Ocean Vil. Apts.,* 222 AD2d 551, citing *Jacqueline S. v City of New York,* 81 NY2d 288, 294-295; *Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 519-520). Here, other than the presence of vagrants in the building lobby on three occasions during a recent winter, the only evidence of any criminal activity on the premises was the injured plaintiff's recollection that someone in the building had been robbed and assaulted at least 10 years earlier. The plaintiffs therefore failed to submit evidence raising a triable issue of fact as to whether the incident in question was reasonably foreseeable (*see, Francis v Ocean Vil. Apts., supra; Ianelli v Powers,* 114 AD2d 157, 162-163; *Santiago v New York City Hous. Auth.,* 101 AD2d 735, *affd* 63 NY2d 761; *see also, Palsgraf v Long Is. R.R. Co.,* 248 NY 339). Rosenblatt, J. P., Copertino and Altman, JJ., concur.

Friedmann, J., concurs in part and dissents in part and votes to modify the order appealed from by deleting the provision thereof which granted the motion of the defendants third-party plaintiffs for summary judgment and substituting therefor a provision denying their motion, with the following memorandum: According to the record, the intercom system in the plaintiffs' apartment building at 1901 Dorchester Road in Brooklyn had been malfunctioning for many months (since at least October 1989) before the June 1990 assault. In fact, although repeated notations by workmen for the third-party defendant, Frank Brandt Bell & Intercom Corp., indicated that the entire system needed replacement, the defendant landlord undertook only piecemeal or superficial repairs, apparently to save money. According to Mr. David Hertz, a witness for the third-party defendant, the installation of a new intercom panel in early 1990 was merely "cosmetic" and did not address the underlying problem. He explained how an electrical short circuit in the system affected the transmitter in such a way that a tenant could not hear a visitor in the vestibule speaking into the intercom (although apparently, at least in some instances, the visitor *could* hear the tenant). Because there was "one central transmitter in the lobby to send voices * * * from the lobby to [all] the apartments", if *one* tenant was unable to hear a visitor talking into the intercom, *no* tenant could.

The third-party defendant had scheduled a mechanic to repair the intercom on May 22, 1990. However, the record reflects that thereafter the third-party defendant's repairmen visited the premises to "clear shorts" in the intercom wiring of

individual apartments on May 23, May 24, May 29, June 7, June 10, June 12, July 2 (four days after the assault on Nancy Howard-Seay), July 3, July 5, July 6, July 12, July 19, and on subsequent illegible dates, through November 2, 1990. The apartments experiencing "shorts" during this period included: 1A, 1C, 2A, 2B, 2C, 3B, 4A, 5E, 6A, and 8C. According to one notation, the entire B and C lines were "N.G.". The repairmen repeatedly noted in their logs: "this system *must* be replaced" (emphasis in original).

In or around July 11, 1991, more than a year after the assault on Nancy Howard-Seay, the landlord applied for a rent increase based upon two capital improvements he had made in the building: he had installed a new intercom system and had "upgraded" the building's broken elevator. The intercom replacement was reported to have been completed on October 1, 1990.

In the months preceding the attack on Nancy Howard-Seay, she and her husband had registered 10 to 12 oral complaints with the superintendent relative to the broken intercom. According to Mr. Seay, because the building's intercom and its sole elevator were inoperative at the same time, he had been obliged for some eight months to walk down eight flights of stairs to see who was ringing his doorbell. It was Mr. Seay's understanding that other tenants in the building had been put to comparable inconvenience. The issue of the chronically broken intercom had become a prominent topic at tenants' meetings. In addition, on at least three occasions, Mr. Seay had helped to eject "vagrants" who had gotten into the building's interior hallways.

It was in this context that on the afternoon of June 28, 1990, Nancy Howard-Seay entered her apartment building, aware that a man had been following her for several blocks. When she had attained the safety of her vestibule, having pushed the self-locking inner door closed behind her, she saw the man who had been following her in the outer foyer, gesturing to her to let him in. She refused, and then saw the stranger, through the glass, pressing one or more of the intercom buttons. In response, she overheard a tenant inquire through the intercom, "who?", and then ring the buzzer, letting the stranger in (*cf., Rojas v Lynn,* 218 AD2d 611). Ms. Howard-Seay was subsequently robbed at gunpoint by the intruder. After the man had taken her pocketbook, he hammered her head savagely against the wall and hurled her down a flight of concrete stairs, causing her serious physical and emotional injuries.

It is well established that a landlord in its proprietary capac-

ity is responsible for maintaining its premises in a reasonably secure and physically safe condition for its tenants and others lawfully on the premises (*see, e.g., Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507; *cf., Waters v New York City Hous. Auth.,* 69 NY2d 225; *see also, Einhorn v Seeley,* 136 AD2d 122; Restatement [Second] of Torts §§ 449, 302B; Prosser and Keeton, Torts § 57, at 386 [5th ed]). Where a landlord has "assumed a limited duty of protection by the installation of [a] bell and buzzer system", which it then "permit[s] to fall into disrepair", "[t]he fact that the immediate cause of the tenant's injury was the act of a third party, i.e., a criminal intruder, does not prevent the landlord's negligence from being regarded in contemplation of law as the *proximate cause*" of the plaintiff's harm (*Sherman v Concourse Realty Corp.,* 47 AD2d 134, 139 [emphasis in original]).

Although the majority makes much of the fact that no "crime" had been committed in the subject premises for the past 10 years, so that the defendant landlord was not "on notice" of the danger to its tenants posed by a chronically inoperative intercom, the injured plaintiff's husband testified that he had personally helped to remove three "vagrants" from the hallways (*see, e.g., Miller v State of New York,* 62 NY2d 506). The cases hold that "[t]here is no requirement * * * that the past experience relied on to establish foreseeability be * * * of the same type of criminal conduct to which plaintiff was subjected" for the defendant landlord to be on notice of the danger posed by a defective security system (*Jacqueline S. v City of New York,* 81 NY2d 288, 294).

In any event, the very purpose of an intercom is to permit tenants to identify persons seeking entry into their building, and to enable them to exclude trespassers (*see, e.g.,* Multiple Dwelling Law § 50-a [requiring New York buildings containing more than eight apartments to have a working intercom system]). It is foreseeable that the longer an intercom is inoperative, the greater the likelihood that weary tenants will begin "buzzing in" anyone who rings, particularly where, as here, the only elevator in the eight-story building is also broken, obliging residents to climb up and down the stairs to identify their visitors. And it is consequently also foreseeable that the greater the period of time that a security system is broken, the greater the statistical probability that a criminal will get into the building and injure one of the tenants.

In *Benaquista v Municipal Hous. Auth.* (212 AD2d 860), the plaintiff sued to recover damages for injuries incurred when she fell down a flight of stairs that she was descending to see

who was ringing her doorbell, because her intercom was broken. The Appellate Division, Third Department, analyzing *Sherman v Concourse Realty Corp.* (47 AD2d 134, *supra*), and distinguishing it from *Benaquista,* stated: "In [*Sherman*] * * * the risk bringing about the plaintiff's injury, the substantial danger of serious physical injury or death from entry by a mugger or burglar, was not just foreseeable, but its prevention was the very purpose for the entry door lock. As such, '[t]he landlord's neglect * * * "gave rise to the stream of events that culminated in" the tenant's injuries' " (*Benaquista v Municipal Hous. Auth., supra,* at 861, quoting *Matter of Guardian Cas. Co. [Kuttler],* 253 App Div 360, 362, *affd* 278 NY 674).

Similarly, the landlord's neglect in the case at bar gave rise to the high probability that an unidentified tenant would press his buzzer without knowing who was ringing his intercom bell, and that a criminal would take advantage of a broken security system. In consequence, neither of these predictable events qualifies as an extraordinary or unforeseeable superseding cause, severing the causal connection between Ms. Howard-Seay's injuries and the defendants' protracted failure to repair or replace the malfunctioning intercom (*see, Derdiarian v Felix Contr. Corp.,* 51 NY2d 308; *McCann v City of New York,* 205 AD2d 668; *cf., Mkrtchyan v 61st Woodside Assocs.,* 209 AD2d 490; *Firpi v New York City Hous. Auth.,* 175 AD2d 858; *Tarter v Schildkraut,* 151 AD2d 414; *Gill v New York City Hous. Auth.,* 130 AD2d 256). As Restatement (Second) of Torts § 449 makes clear: "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby".

In my view, the plaintiffs established that there were significant questions of fact regarding the condition of the intercom on the day of the incident, the reasonableness of the defendants' security measures, the foreseeability of danger, and whether the assailant's criminal purpose and/or the unknown tenant's act of buzzing him into the building constituted a superseding cause (*Padilla v 960 Mgt.,* 195 AD2d 333). Accordingly, I would modify the order appealed from by denying the defendants' motion for summary judgment and remit the matter for a trial (*see, McCann v City of New York, supra; Hendricks v Kempler,* 156 AD2d 425).

However, the record supports the granting of summary judgment to the third-party defendant as there is no triable issue of fact that it was negligent, since the failure to repair the

intercom was the result of the defendants' refusal to permit full replacement of the intercom system.