203 F.3d 145 (2nd Cir. 2000)
 NEW YORK CITY HOUSING AUTHORITY, PLAINTIFF-COUNTER-DEFENDANT-APPELLANT,
v.
HOUSING AUTHORITY RISK RETENTION GROUP, INC., DEFENDANT-COUNTER-CLAIMANT-APPELLEE
 No. 99-7264
August Term, 1999
 U.S. Court of Appeals, Second Circuit
 Argued: October 26, 1999
Decided: January 31, 2000
 
 [Copyrighted Material Omitted]
 Jeffrey Schanback, General Counsel, New York City Housing Authority, New York, NY (Sonya M. Kaloyanides and Glenda L. Fussa, of counsel, on the brief), for Plaintiff-Counter-Defendant-Appellant.
 John A.ZIEGLER, Sliwa & Lane, Buffalo, N.Y., for Defendant-Counter-Claimant-Appellee.
 Before: Oakes, Pooler, and Katzmann, Circuit Judges.
 
 Pooler, Circuit Judge
 
 1
 This appeal requires us to decide whether an insured party's improper refusal to allow its insurer to convey a settlement offer constitutes willful and avowed obstruction justifying the insurer's failure to seek its cooperation before disclaiming liability. See Thrasher v. United States Liab. Ins. Co., 278 N.Y.S.2d 793 (1967).
 
 
 2
 After unknown attackers entered the lobby of a public housing building owned by the New York City Housing Authority ("NYCHA") and shot Amado Sanchez, he sued NYCHA alleging negligent maintenance of the building locks. NYCHA's insurance company, the Housing Authority Risk Retention Group, Inc. ("HARRG"), attempted unsuccessfully to settle the case. HARRG disclaimed coverage when NYCHA refused to permit HARRG to convey a second settlement offer to Sanchez. The next day, February 27, 1997, the jury returned a verdict in Sanchez's favor of 5.5 million dollars, more than double the proposed settlement. NYCHA sued HARRG for indemnification in the United States District Court for the Southern District of New York.
 
 
 3
 On January 25, 1999, the district court, Denny Chin, Judge, issued a memorandum decision granting HARRG's cross-motion for summary judgment and entered judgment on February 8, 1999. The district court found that Sanchez had a "reasonable chance" of prevailing in his lawsuit, and, therefore, that NYCHA breached the terms of the insurance agreement by refusing to allow HARRG to settle the case. The district court further held that HARRG effectively disclaimed liability. For the reasons that follow, we now reverse the judgment of the district court and remand the case for further proceedings.
 
 BACKGROUND
 
 4
 The facts are not in dispute. NYCHA is a public benefit corporation organized under the laws of New York and operates more than 340 public housing developments in New York City. HARRG, a mutual insurance company, insures public housing authorities nationwide. Under General Commercial Liability Policy No. 33-0004-93-00-000-0 (the "Policy"), in effect from June 1, 1993, through June 1, 1994, HARRG agreed to provide personal injury coverage to NYCHA for losses over the self-insured retention of $500,000 and under the 5 million dollar policy limit per occurrence. The policy gave HARRG discretion to settle lawsuits with a "reasonable chance" of exceeding the $500,000 self-insured retention.
 
 
 5
 On September 5, 1993, Amado Sanchez was shot and paralyzed by assailants in the lobby of a NYCHA run public housing development at 5 Fleet Walk, Brooklyn, New York. According to Sanchez and Mario Morales, who witnessed the shooting, the assailants came through the front door of the building. Neither Morales nor Sanchez could identify the assailants. Evidence introduced at trial, including NYCHA's own records, indicated that the lock had been out of order for approximately forty-one days in the two months preceding the attack. The lock remained broken on September 1, the last entry in NYCHA's records before the shooting.
 
 
 6
 Sanchez sued NYCHA on February 10, 1994, and alleged that it was negligent in the "management, maintenance, operation and . . . control of the premises." Sanchez asserted that the front door lock was broken on the day of the attack. NYCHA disputed Sanchez's claim and hired the law firm Wilson, Elser, Moskowitz, Edelman & Dicker ("Wilson Elser"). Alan Kaminsky, a Wilson Elser partner, acted as trial counsel.
 
 
 7
 As the trial neared its close, Robert M. Sullivan, HARRG's Director of Claims, asked that NYCHA relinquish the $500,000 self-insured retention as part of a 1 million dollar settlement offer. This NYCHA refused to do. Sullivan nonetheless asked Kaminsky to convey the proposed settlement. Kaminsky made the offer, but Sanchez rejected it. On February 24, 1997, NYCHA's Assistant Corporation Counsel, Ruth J. Bednarz, "strongly object[ed]" to settlement of the case and contended that well-established New York law would not permit recovery:
 
 
 8
 [t]he current law in the State of New York requires that in order for a plaintiff to recover against a property owner for an assault on the premises, the plaintiff must prove . . . the identity of the assailant in order to prove that the assailant was an intruder with no right to be on the premises. At the trial of this case, plaintiff has clearly not proven the identity of his assailant. The absence of this proof is fatal to plaintiff's case.
 
 
 9
 Letter from Ruth J. Bednarz, NYCHA, to Robert M. Sullivan, HARRG (Feb. 24, 1997).[1] Despite NYCHA's objection to settling, HARRG then decided to make a "high-low" offer guaranteeing 1 million dollars and, depending on the jury's verdict, allowing recovery up to 2.5 million dollars. On February 24, 1997, in the evening, Sullivan spoke with Kaminsky and directed him to convey the revised settlement offer. Kaminsky consulted with NYCHA the following morning and received instructions from Bednarz not to pass along the proposed settlement. In a letter dated February 25, 1997, Bednarz informed HARRG of NYCHA's decision not to permit the high-low settlement offer. HARRG disclaimed coverage in a letter faxed to NYCHA on February 26, 1997: "Due to your obstructive conduct . . . this is to advise that [HARRG] must hereby disclaim any and all coverage obligations to you in this matter." Letter from Robert M. Sullivan, HARRG, to Ruth J. Bednarz, NYCHA (Feb. 26, 1997).
 
 
 10
 The jury came back to the courtroom at 4:18 p.m. the following day and awarded Sanchez 5.5 million dollars. In a special verdict, the jury determined that the "[p]eople who assaulted plaintiff enter[ed] through the front entrance of 5 Fleet Walk," that they were intruders, and that NYCHA had been negligent. On February 28, 1997, Bednarz wrote HARRG and demanded that it rescind its disclaimer. When HARRG declined to do so, NYCHA brought this lawsuit. NYCHA simultaneously pursued a direct appeal in state court.
 
 
 11
 While the state court appeal was pending before the Second Department, the New York Court of Appeals held in another case that circumstantial evidence alone suffices to support a finding that unidentified assailants were not residents or guests of a housing development. See Burgos v. Aqueduct Realty Corp., 684 N.Y.S.2d 139, 142 (1998) ("[B]ecause victims of criminal assaults often cannot identify their attackers, a blanket rule precluding recovery whenever the attacker remains unidentified would place an impossible burden on tenants."). The Burgos decision effectively removed NYCHA's basis for appeal, its argument that New York law required Sanchez to identify his attackers in order to establish that they were not residents or guests of the housing development. On December 17, 1998, the Appellate Division, Second Department, agreed with the trial court that "the evidence . . . was legally sufficient to support a verdict in favor of the plaintiff." See Sanchez v. New York City Hous. Auth., 682 N.Y.S.2d 103, 104 (2d Dep't 1998).
 
 
 12
 In a January 25, 1999, memorandum decision, the district court rejected NYCHA's contention that it had no obligation to permit settlement and found that HARRG had effectively disclaimed liability. See New York City Hous. Auth. v. Housing Auth. Risk Retention Group, Inc., No. 99 Civ. 8243(DC), 1999 WL 33297 (S.D.N.Y. Jan. 25, 1999). NYCHA appeals the judgment.
 
 DISCUSSION
 
 13
 Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On an appeal from summary judgment granted by a district court, "`we review the record de novo, drawing all factual inferences and resolving all ambiguities in favor of the nonmoving party.'" Bouzo v. Citibank, N.A., 96 F.3d 51, 56 (2d. Cir. 1996) (quoting Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996)). There are no factual questions before us in this appeal, and so we address whether summary judgment was awarded to the proper party, not whether it should have issued at all. The instant appeal presents two questions: first, whether New York law at the time HARRG made its high-low settlement proposal allowed a plaintiff to rely upon circumstantial evidence to establish that assailants were intruders and not tenants or guests (and, therefore, whether Sanchez had a reasonable chance of success); and, second, whether HARRG's disclaimer of coverage comported with the Thrasher requirements. See Thrasher, 278 N.Y.S.2d at 800. We conclude that Sanchez had a reasonable chance of success but that HARRG's disclaimer was ineffective, and so we reverse and remand to the district court for determination of the appropriate indemnification.
 
 A. Reasonable Chance
 
 14
 Whether NYCHA was obligated to cooperate with HARRG's settlement efforts in February 1997 depends on whether it appeared that Sanchez had a reasonable chance of recovering more than NYCHA's $500,000 self-insured retention. In the Policy, HARRG made clear that it would provide coverage only if given wide latitude to settle lawsuits with a "reasonable chance" of success:
 
 
 15
 We may investigate any occurrence and settle any claim or "suit" at our discretion in excess of $250,000 if there is a reasonable chance that the claim, suit or suits will exceed the self-insured retention [i.e. $500,000]. You will promptly reimburse us if we pay an amount that is within your self-insured retention.
 
 
 16
 The Policy does not further define reasonable chance. In past cases, we have employed an objective standard and limited our inquiry to the information available at the time of decision. See, e.g., Unigard Sec. Ins. Co. v. North River Ins. Co., 4 F.3d 1049, 1065 (2d Cir. 1993). We adopt that approach here. Under New York common law, to hold a landlord liable for torts committed by third parties, a plaintiff must demonstrate that the third parties were intruders with no right or privilege to be on the premises, and that they gained entry because of the landlord's negligence. See, e.g., Perry v. New York City Hous. Auth., 635 N.Y.S.2d 661, 662-63 (2d Dep't. 1995).[2] Sanchez was unableto specifically identify his assailants and had a reasonable chance of prevailing only if New York law at the time allowed circumstantial evidence to show that attackers were intruders and not tenants or guests. Because we must examine the objective circumstances known to NYCHA when it refused to convey the settlement offer, our analysis differs from that of the district court, which relied on the jury verdict and its subsequent affirmance.
 
 
 17
 NYCHA asserts that it was well settled in early 1997 that a plaintiff could not demonstrate that an assailant was an intruder merely by showing that the assailant was unfamiliar. Therefore, "[b]ecause Sanchez's assailants were not identified, let alone apprehended, Sanchez failed to establish that his assailants were intruders with no right or privilege to be on the premises, and this case should not have reached the jury." NYCHA admits that as New York law now stands, Sanchez would have had a reasonable chance of prevailing, but it contends, and HARRG agrees, that only the case law as it existed at the time of Sanchez's suit is relevant.[3] The cases NYCHA relies upon, however, do not preclude the use of circumstantial evidence to establish intruder status.
 
 
 18
 Two cases cited by NYCHA concern an identified person and turn on whether that person was an intruder. See Pitchon v. City of New York, 664 N.Y.S.2d 559, 560 (2d Dep't 1997) (post-dating Sanchez); Perry, 635 N.Y.S.2d at 662 (2d Dep't 1995) (assailant was ex-boyfriend). In four other cases, the victim either never saw the attacker or did not live to testify. See Gleaton v. New York City Hous. Auth., 633 N.Y.S.2d 399, 400 (2d Dep't 1995); Bajana v. Presbyterian Hosp., 647 N.Y.S.2d 465 (1st Dep't 1996); Wright v. New York City Hous. Auth., 624 N.Y.S.2d 144 (1st Dep't. 1995); Rojas v. Lynn, 631 N.Y.S.2d 15 (1st Dep't 1995). In those cases, the defendants prevailed because not even circumstantial evidence indicated that the assailant or assailants were intruders. The plaintiff in another case upon which NYCHA relies lacked credibility, because he first testified that his attacker was from the same housing project and then recanted, conveniently asserting that the attacker was actually an intruder. See Melville v. New York City Hous. Auth., 661 N.Y.S.2d 632, 634 (1st Dep't 1997). In two additional cases in which the plaintiffs did not recover, the court addressed the related issue of entry, rather than whether the attacker was an intruder. See Hargett v. New York City Hous. Auth., 664 N.Y.S.2d 348, 349 (2d Dep't 1997) (post-dating Sanchez), rev'd, 92 N.Y.2d 975 (1998) (summary reversal based on Burgos); Shinn v. Lefrak Organization, Inc., 657 N.Y.S.2d 1005 (2d Dep't 1997) (post-dating Sanchez). Finally, NYCHA cites Fowler v. New York City Hous. Auth, 663 N.Y.S.2d 32 (1st Dep't 1997) and Tolliver v. New York City Hous. Auth., 655 N.Y.S.2d 534 (1st Dep't 1997). These cases have little relevance as they were decided both after Sanchez and by another department. In addition, both cases are distinguishable on their facts. There is no indication that the plaintiff in Fowler actually saw the attackers enter the building, as did Sanchez. See Fowler, 663 N.Y.S.2d at 32. The plaintiff in Tolliver was assaulted as he was leaving his apartment, and so he could not say how his assailant gained entry. See Tolliver, 655 N.Y.S.2d at 535.[4]
 
 
 19
 HARRG relies upon Sherman v. Concourse Realty Corp., 365 N.Y.S.2d 239 (2d Dep't 1975). In Sherman, the plaintiff testified that seconds after he entered the lobby, through a door with a broken lock, someone came in behind him and attacked him. See id. at 241. The court concluded that "the tenant's testimony, if credited by the jury, constituted sufficient circumstantial evidence from which the jury could reasonably infer that the assailant was an intruder who entered the lobby by pushing open the lockless lobby entrance door." Id. at 242. NYCHA contends that the case is too old to be of much value in light of later decisions, that the court focused on entry rather than intruder status, and that the court did not explicitly discuss the admissibility of circumstantial evidence to establish whether an assailant was an intruder. The latter criticisms apply with equal force to the cases NYCHA relies upon. In fact, none of the cases decided before Sanchez appear to address squarely the issue of circumstantial evidence eventually resolved in Burgos. While the pre-Sanchez cases may reflect a certain hostility toward negligence suits by a victimized tenant against a landlord, they never preclude the use of circumstantial evidence.
 
 
 20
 In short, a lawyer working in the common-law tradition could have made a good faith argument that New York case law stood for the proposition that an intruder must be positively identified as such, but a lawyer might also have argued that the cases merely required sufficient evidence (of whatever kind) to show that the assailant was an intruder.[5] Because the law was unsettled on the issue of circumstantial evidence, we hold that Sanchez had a reasonable chance of recovering more than NYCHA's $500,000 self-insured retention and that NYCHA breached the Policy by preventing HARRG from settling. HARRG was, therefore, entitled to disclaim. See, e.g., Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 276-77 (1928) (Cardozo, J.). However, as discussed below, HARRG's disclaimer was ineffective.
 
 A. HARRG's Disclaimer of Liability
 
 21
 In Thrasher, the New York Court of Appeals explained that an insurance company bears a heavy burden in seeking to disclaim liability, because an innocent third party often will suffer. See 278 N.Y.S.2d at 800. The test the court articulated has three parts:
 
 
 22
 In order to disclaim coverage on the ground of an insured's lack of cooperation, the carrier must demonstrate (1) that it acted diligently in seeking to bring about the insured's cooperation, (2) that the efforts employed by the insurer were reasonably calculated to obtain the insured's cooperation, and (3) that the attitude of the insured, after his cooperation was sought, was one of willful and avowed obstruction.
 
 
 23
 Pawtucket Mut. Ins. Co. v. Soler, 584 N.Y.S.2d 192, 193 (2d Dep't. 1992) (citing Thrasher, 278 N.Y.S.2d at 800). Although time constraints required HARRG to act quickly, its actions did not comport with these stringent requirements.
 
 1. Diligence
 
 24
 On February 24, 1997, NYCHA objected to HARRG's first attempt to settle the case and articulated its view that Sanchez had no reasonable chance of prevailing. Without explaining why it disagreed, HARRG again tried to settle the case through NYCHA's attorney. When NYCHA reiterated its position in a February 25 letter and explained that it could not allow the attorney to convey HARRG's settlement offer, HARRG disclaimed its coverage. It made no attempt to persuade NYCHA that there was a reasonable chance of success, nor did HARRG so much as give NYCHA the opportunity to reconsider its position.
 
 1. Reasonably Calculated
 
 25
 For the reasons noted above, HARRG's actions were not reasonably calculated to elicit NYCHA's cooperation. HARRG's disclaimer did not suggest that NYCHA could change its mind, allow the settlement, and thereby restore coverage. The tone of the disclaimer was final: "[d]ue to your obstructive conduct of this date relative to the above matter, this is to advise that the Housing Authority Risk Retention Group must hereby disclaim any and all coverage obligations to you in this matter."
 
 1. Willful and Avowed Obstruction
 
 26
 Since HARRG never attempted to persuade NYCHA to cooperate, NYCHA's failure to cooperate falls short of willful and avowed obstruction. However, HARRG argues that there is a difference between passive and active obstruction, and that only in the former circumstance must an insurance company take steps to seek further cooperation. In cases where the insured made material misrepresentations, for instance, New York courts have allowed the insurer to disclaim without diligently seeking cooperation. See, e.g., State Farm Mut. Auto. Ins. Co. v. Brown, 250 N.Y.S.2d 244 (4th Dep't 1964) (holding that insured's false statements "prejudiced the insurer" and constituted "`willful and avowed obstruction'") (citation omitted). However, HARRG does not cite any case recognizing a difference between passive and active obstruction as a general matter, and the cases it cites can easily be distinguished because the insured's action prejudiced the insurer. Here, had HARRG quickly persuaded NYCHA to alter its position, settlement negotiations might still have taken place.
 
 CONCLUSION
 
 27
 Although HARRG had grounds to disclaim coverage, it acted without seeking NYCHA's cooperation. To be sure, the time pressure did not leave HARRG the luxury of gently persuading NYCHA, but there is no evidence in the record that it made any attempt to garner NYCHA's cooperation. Therefore, we hold that HARRG failed to satisfy the Thrasher test and reverse the judgment of the district court.
 
 
 28
 We remand for clarification of one matter. If Sanchez would not have accepted the settlement offer HARRG wanted to make -- and nothing before us seems to indicate that he would have agreed to the high-low offer -- then HARRG is left no worse off as a result of NYCHA's breach. It is a basic principle of contract law that damages are awarded to put the injured party in as good a position as it would have been without the breach. See, e.g., Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 495 (2d Cir. 1995); Rich-Haven Motor Sales, Inc. v. National Bank of New York City, 558 N.Y.S.2d 91, 92 (2d Dep't 1990). Unless HARRG can demonstrate on remand that Sanchez would have accepted the proposed settlement, HARRG may not limit its duty to indemnify NYCHA to the high end of its proposed settlement.[6]
 
 
 
 Notes:
 
 
 [1]
 At oral argument, NYCHA clarified that its view was that it would surely prevail on appeal, not that there was no reasonable chance the jury would find in Sanchez's favor.
 
 
 [2]
 The reason for the requirement is obvious: unless the attackers were trespassers, any breach of the landlord's duty to maintain the locks was not the cause-in-fact of the plaintiff's injury.
 
 
 [3]
 Ironically, as HARRG points out, NYCHA itself relies on several cases decided after February, 1997, to bolster its claim that the law was clear before February, 1997. The cases have some relevance, however, in showing the roughly contemporaneous understanding of the law before Burgos. HARRG also objects to NYCHA's use of First Department cases. Although less relevant than Second Department cases, we also consider First Department cases for whatever illumination they may provide.
 
 
 [4]
 We take no view as to whether either case is still good law in light of Burgos.
 
 
 [5]
 That view, which New York has since embraced, makes sense. As the Burgos court noted, requiring actual identification of the intruder would set an impossible standard in virtually all cases. See Burgos, 684 N.Y.S.2d at 142. Nonetheless, it is understandable that NYCHA would seek to shape the law to require identification.
 
 
 [6]
 We note, however, that HARRG's right to disclaim coverage did not turn on whether Sanchez would have accepted the settlement offer. Prejudice has never been required when an insured breaches a condition of the insurance contract. See Coleman, 247 N.Y. at 276-77 ("Co-operation with the insurer is one of the conditions of the policy. When the condition was broken, the policy was at an end, if the insurer so elected.").